[S. F. No. 5335. In Bank.—September 11, 1911.]

## THE PEOPLE et al., Petitioners, v. R. H. LATIMER, Acting Judge of the Superior Court in and for the County of Napa, Respondent.

CONTEMPT—REFUSAL OF WITNESS TO ANSWER BEFORE BOARD OF EQUALIZATION—FINAL ADJOURNMENT—DISCHARGE OF ATTACHMENT BY SUPERIOR JUDGE—CERTIORARI.—Where the refusal of a witness to answer questions before the board of equalization was reported to the superior court as a contempt, and an attachment for contempt was issued, before the hearing of which the board of equalization had finally adjourned, whereupon the presiding judge of the superior court made an order discharging the writ, on the ground that it was no longer possible to compel the witness to answer the questions, it is held that the order discharging the writ, however erroneous it may be, cannot be annulled on *certiorari*. [Shaw, J., and Lorigan, J., dissenting.]

ID.—SITUATION AT TIME OF HEARING—NO RIGHTS AFFECTED.—The situation was such at the time of the hearing, that any answers the witness might give would be of no value to any person, and nobody's rights could be affected thereby; and any penalty that might be imposed would be simply a fine or imprisonment for a stated period simply as a punishment, and not in any degree for the protection of the rights of any third party.

ID.—DISCRETION OF TRIAL COURT—CONCLUSIVENESS OF ACTION.—Whether or not, under such circumstances, a person charged with contempt shall be adjudged guilty thereof and punished, is a matter solely within the discretion of the trial judge or court entertaining the contempt proceedings, and any judgment and order in cases of contempt are final and conclusive under section 1222 of the Code of Civil Procedure.

ID.—REMEDY BY CERTIORARI—EXCESS OF JURISDICTION — ERROR NOT REMEDIABLE.—It is only when an order made is in excess of the jurisdiction of the court making it that it can be annulled on *certiorari*. No mere error in the exercise of jurisdiction can be remedied by that writ.

ID.—MANDAMUS—PROTECTION OF BENEFICIAL RIGHTS.—The remedy by *mandamus* will only lie for the protection of the beneficial rights of the petitioner.

ID.—BENEFICIAL RIGHTS REQUIRED TO SET ASIDE CONTEMPT PROCEEDINGS. —Except when there is some party beneficially interested in having the particular act constituting a contempt performed, the dismissal by a court or judge of a contempt proceeding is final and conclusive, and beyond review by any other tribunal. It cannot be held that there is in this matter any party so beneficially interested. [Lorigan, J., and Shaw, J., dissenting.]

ID.—DUTY OF JUDGE TO DISCHARGE WRIT—ABSENCE OF CONTEMPT.—The only power of the board of equalization being to refer the refusal to answer to the superior court, the witness is not in contempt, until the superior court orders him to answer, and when it is out of his power to answer, before the superior court acts, he is not in contempt, and could not be punished for not answering, and it was the duty of the judge to discharge the writ. [Per Beatty, C. J., concurring in judgment.]

ID.—ABSENCE OF MISDEMEANOR—MISDEMEANOR PUNISHABLE ONLY IN NAME OF PEOPLE.—There is no statute making it a misdemeanor to refuse to answer before the board of equalization, and if there were such statute, the misdemeanor could only be prosecuted and punished in the name of the people. [Per Beatty, C. J., concurring in judgment.]

ID.—STATE A PARTY BENEFICIALLY INTERESTED IN ANNULMENT OF WRIT. —It is considered in the dissenting opinions, that the state is a party beneficially interested in taxation, and that in its interest, the order dismissing the attachment for contempt should be annulled upon *certiorari*. [Per Shaw, J., and Lorigan, J., dissenting.]

PETITION for Writ of Review to annul the action of the Superior Court of Napa County. R. H. Latimer, Judge of Contra Costa County, presiding.

The facts are stated in the opinion of the court.

F. M. Silva, District Attorney, and Theo. A. Bell, for Petitioners.

A. J. Hall, Frank L. Coombs, for Respondent.

THE COURT.—This is a proceeding in *certiorari* to review an order made by the respondent, discharging and dissolving an attachment against the person of E. L. Bickford issued in a contempt proceeding.

On August 7, 1909, the chairman of the board of supervisors of the county of Napa made and filed with the clerk of the superior court of said county, and presented to the Honorable H. T. Gesford, the judge of said superior court, a verified certificate of facts. That certificate showed that on August 5, 1909, the board of supervisors of said county, sitting as a board of equalization, had before it for consideration and action the matter of directing the assessor of said county to assess to one H. A. Crawford, a resident of said county, taxable property owned by said Crawford at 12 o'clock meridian on the first Monday in March, 1909, which had escaped taxation; that previously, and on the sixteenth day of July, 1909, the clerk of the said board of supervisors, upon the order of said board, sitting as a board of equalization, had notified the said Crawford by letter, postpaid, and deposited in the post-office at Napa, which was his place of residence, that said board would, on July 22, 1909, investigate the matter of directing the assessor of Napa County to assess to him any taxable property owned by him at 12 o'clock meridian on the first Monday in March, 1909, and which had escaped taxation; that the investigation of said matter was continued from time to time until August 5, 1909, when it was taken up by said board of equalization for action; that at the said time E. L. Bickford was duly sworn as a witness, and after testifying that he was the cashier of the First National Bank of Napa, and knew whether or not said H. A. Crawford had any money on deposit in said bank at 12 o'clock meridian on said first Monday of March, 1909, was asked the following question: "Did H. A. Crawford have any money on deposit in the First National Bank of Napa on the first Monday in March, 1909, at 12 o'clock meridian?" that said E. L. Bickford refused to answer said question, and thereupon the board, having de-

termined that the question was proper and pertinent, directed the chairman of said board to require the witness to answer it; that the chairman of said board directed said witness to answer the question, but he again refused to do so; that the board thereupon unanimously declared that said witness be deemed in contempt for his refusal to answer, and directed the chairman of the board to report the facts to the judge of the superior court of Napa County, that such proceedings might be taken in said matter as required by law.

On the filing of said certificate with Judge Gesford, he issued an attachment directed to the sheriff, commanding him to attach the person of said E. L. Bickford forthwith and bring him before said judge; that thereafter and on August 7, 1909, the sheriff, under said attachment, brought said Bickford before said judge, and by stipulation of counsel the hearing was continued to August 10, 1909, to be taken up before respondent, judge of the superior court of Contra Costa County, sitting in the place and stead of said judge of the superior court of Napa County.

On August 10, 1909, the matter coming up before the respondent, Judge Latimer, counsel for Bickford moved to discharge the attachment on the ground: 1 that the board of equalization had no jurisdiction over said H. A. Crawford mentioned in the certificate of facts; 2 that at the time of the alleged contempt the duty of the board of equalization had expired by limitation of time; 3 that said board had no power to assess any taxable property to H. A. Crawford which might have escaped taxation, and 4 that the said board of equalization had no jurisdiction of E. L. Bickford by reason of the fact that he was an officer of a national bank.

No testimony or evidence was presented on the hearing. The motion was argued by counsel and submitted, and on August 12, 1909, an order was made by the respondent, Judge Latimer, that the attachment be dissolved and the said E. L. Bickford discharged.

Insisting that in making the order Judge Latimer exceeded his jurisdiction, this proceeding was instituted here to have such order reviewed and annulled, and such further order made as may be proper in the premises.

At the time the contempt proceedings came on for hearing in the superior court, the board of equalization had finally ad-

journed, it was no longer possible to receive any testimony from any one on the matters concerning which it had been sought to examine Bickford, and such matters had been definitely closed so far as such board was concerned.

We are of the opinion that we cannot disturb the action of the trial court. Assuming purely for the purpose of this decision that Bickford was guilty of contempt under the provision of section 4068 of the Political Code, and should have been so adjudged, the board of equalization having finally adjourned, he could not have been imprisoned until he answered the questions that had been propounded to him as a witness before said board, in other words, he could not have been imprisoned as a means to compel such answers, as would have been permissible had the board still been in session, and in a position to take action in the matter wherein his testimony was desired. The situation was such at the time of the hearing in the superior court, that any answers he might give would be of no value to any person. Nobody's rights could be affected thereby. The only penalty that it was possible for the trial court to impose was a fine or imprisonment for a stated period or both such fine and imprisonment, simply as a punishment, and not in any degree for the protection of the rights of any third party.

Whether or not under such circumstances a person charged with contempt shall be adjudged guilty thereof and punished therefor is a matter solely within the discretion of the court entertaining the contempt proceedings. The law does not authorize an appeal in such matters, and it is expressly provided in section 1222 of the Code of Civil Procedure, that "the judgment and orders of the court or judge, made in cases of contempt are final and conclusive." It is only when an order so made is in excess of the jurisdiction of the court making it that it may be annulled on *certiorari*. Even if we assume that the trial court erred in refusing to adjudge Bickford guilty of contempt, it cannot be held that it exceeded its jurisdiction in doing so. It simply erred while acting in the exercise of its jurisdiction. It has been held, as in *Crocker* v. *Conrey*, 140 Cal. 213, [73 Pac. 1006], that *mandamus* will lie at the suit of one beneficially interested to compel a court to employ the process of contempt against a witness to compel him to answer such questions, where such answers when given will be avail-

able to such party in a pending proceeding. Likewise, doubtless, *mandamus* will lie to compel such action on the part of a court to compel compliance with an order requiring the payment of alimony when the party is financially able to so comply, or in any case where compliance with an order is essential for the protection of the beneficial rights of the petitioner. But except when there is some party beneficially interested in having the particular act constituting a contempt performed, the dismissal by a court or judge of a contempt proceeding is final and conclusive, and beyond review by any other tribunal. It cannot be held that there is in this matter any party so beneficially interested.

It follows that the order of the superior court must be affirmed, and it is so ordered.

BEATTY, C. J., concurring.—I concur in the judgment.

A person who refuses to answer a question which a majority of the board of equalization decides to be proper and pertinent, as declared by section 4068 of the Political Code, *"shall be deemed in contempt,"* whatever that may mean. Apparently he is in contempt of the authority of that board, but they have no power to punish him for the contempt. All that they can do is to report his contumacy to the superior court and cause his arrest and arraignment before that tribunal. When so arraigned he has committed no contempt of court, and it is difficult to see how he can do so in connection with the cause of his arrest, unless, after the court shall have decided that the question is one he ought to answer and ordered him to answer, he still refuses. He is then, and for the first time, guilty of a contempt of court, for which the court may punish him by fine and imprisonment, and may keep him in prison until he does answer, or until the adjournment of the board puts it out of his power to answer. This in my opinion is the meaning and whole scope of the provisions of sections 4068 and 4069 of the Political Code, which, owing to the fact that the board of equalization had adjourned *sine die* before Bickford was arraigned before Judge Latimer, proved wholly inadequate to the exigencies of the case. It would have been vain for him to order Bickford to answer when there was no board in existence, to which an answer could be made, and since he could not order him to answer he could not punish him for not

CLX Cal.—46

answering. He could do nothing in short but what he did—discharge the attachment for contempt—unless, as seems to be contended, Bickford's contempt of the authority of the board of equalization was a misdemeanor punishable as other misdemeanors, and that in a summary proceeding by the superior judge. But there is no statute making a contempt of the authority of the board of equalization a misdemeanor, and if it were a misdemeanor the constitution would require it to be prosecuted in the name of the People of the state of California (Art. VI, sec. 20) and in the ordinary form of procedure and subject to the common rights of defendants in criminal actions.

The amount of it is that the statute needs to be amended and strengthened, by making the contempt of the board a misdemeanor and providing an adequate penalty. The present statute, owing to the short life of the board of equalization is practically impotent.

SHAW, J., dissenting.—I agree with all that is said in the foregoing opinion by the court, except the discussion and conclusion to the effect that the order erroneously made by the superior court cannot be annulled on *certiorari.* The superior court was not without jurisdiction, for it still retained power to punish the party for the contempt by imposing a fine or imprisonment. It did not exercise its jurisdiction by deciding that Bickford should not, under the facts charged, be punished. It dismissed the proceeding solely because it decided that it had no jurisdiction to impose any punishment, no power to act at all in the matter. The court, by the order dismissing the proceeding, erroneously divested itself of further jurisdiction thereof. "Where such is the case, the writ of *certiorari* is a proper proceeding to annul the order." (*Hall* v. *Superior Court,* 71 Cal. 550, [12 Pac. 672] ; *Levy* v. *Superior Court,* 66 Cal. 292, [5 Pac. 353; *Hall* v. *Superior Court,* 68 Cal. 25, [8 Pac. 509] ; *Carlson* v. *Superior Court,* 70 Cal. 631, [11 Pac. 788].) The entire proceeding before the board of supervisors and the ancillary proceeding in the superior court was at the behest of the state, and they were had for the purpose of securing the equal taxation of the property liable thereto, a matter in which the state is directly interested and is, in fact, the real party in interest. It is therefore benefi-

cially interested to a sufficient extent to give it a standing in court to have the order annulled and the prosecution for contempt of its authority completed and determined. The order dismissing the proceeding should, in my opinion, be annulled and the superior court, being then invested with jurisdiction, could proceed to trial and judgment upon the charge against Bickford.

LORIGAN, J., dissenting.—I concur with the views expressed in the foregoing dissenting opinion of Mr. Justice Shaw. As to the prevailing opinion, while I am satisfied that from the undisputed certification of facts Bickford was guilty of contempt of the authority of the board of supervisors meeting as a board of equalization, I cannot agree with the view announced therein that there is no party beneficially interested in this proceeding who is entitled to have the order of the court annulled on *certiorari*.

The constitution—article XIII, section 1—requires all property not exempt from taxation to be taxed in proportion to its value and under section 3672 of the Political Code the board of supervisors meeting as a board of equalization is invested with the power and it is made its duty to carry this constitutional mandate into effect. It is directed by said section 3672 to "equalize the assessment of property in the county," and unless all property is assessed necessarily the assessment is not equal and the constitutional mandate that all property be taxed is not carried into effect. The board, as an agency of the state, was proceeding to carry out this duty under the provisions of the law authorizing it to examine witnesses for that purpose when Bickford refused to testify and for such refusal was guilty of contempt under section 4068 of the Political Code and to punishment therefor under section 4069 of the same code.

These proceedings before the board in the matter of equalizing assessments are essential proceedings in which the state is vitally interested, being directed, under the provisions of the constitution and statutes, toward the securing of the equal assessment of all property. This being true, it must be equally beneficially interested in proceedings brought to punish for a contempt of its authority in an endeavor to discharge this public duty. There is no room for any distinction as far as

the public interests—the interests of the state—are concerned in proceedings before the board in the matter of the equalization of assessments and proceedings for contempt of the authority of the board in attempting to do so. They are both in aid of the public interests.

While, of course, it must be conceded that when the order discharging the attachment was made there was no board in session before which Bickford might have voluntarily appeared to purge himself of contempt or before which the court might have required him to appear and answer and order him imprisoned until he did so, still this afforded no warrant for the action of the court in discharging the attachment and releasing him. He was guilty of contempt in refusing to answer before a board which was lawfully in session at the time of the refusal. If the result of his contumacy was that before he could be brought to bar for contempt his opportunity to purge himself therefrom was gone, this constituted no reason why the judge of the superior court should have discharged him without punishment. He was still guilty of contempt and the court should have exercised its power and punished him by fine or imprisonment or both.

Respondent claims that by the order discharging Bickford the superior court has now lost jurisdiction to proceed at all against him and that no substantial benefit can be obtained by an annulment of the order. I do not agree with this view. The effect of the annulment of the order in question here is to leave the proceeding before that court as it stood when that order was made. It then had jurisdiction of him and it has now the power to secure his presence before it by a bench warrant. It is its duty to do so and try him for the alleged contempt and if found guilty punish him. Such disposition of the case is essential in my judgment to the proper maintenance of the power and dignity of the state.

SHAW, J., concurring.—I concur in the foregoing opinion of Justice Lorigan.