## FLEMING v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. March 27, 1922. Rehearing Denied May 8, 1922.)

No. 3765.

**1. Contempt ☞6—Accused could not support motion for change of venue by affidavit charging judge with crime.**

An accused was not within his rights in presenting to the United States Court for China a motion for a change of venue on the ground of bias and prejudice of the judge, together with a supporting affidavit setting forth a charge of embezzlement against the judge and a conspiracy against the accused, there being no other judge that could be called in in such district, and court properly adjudged him guilty of direct contempt, under Judicial Code, § 21 (Comp. St. § 988).

**2. Contempt ☞52—Constitutional law ☞273—No formal charge, citation, or answer required to punish for direct contempt.**

Where an accused presents and reads in court, in connection with a motion for change of venue, an affidavit which is scandalous, insulting, libelous, and contemptuous, and tends to obstruct the administration of justice, no formal charge, citation, or answer is required in order to punish him for contempt; a summary inquiry and a record of the finding and punishment being sufficient to constitute due process of law.

**3. Contempt ☞28(1)—Truth of charges made against court immaterial.**

In order to punish one for presenting and reading in court an affidavit charging the judge with embezzlement and conspiracy against the accused, in connection with a motion for change of venue, it was not necessary to take testimony of witnesses to show that the charges were untrue.

**4. Contempt ☞34—United States Court for China has inherent right to punish for contempt.**

The United States Court for China, created by Act June 30, 1906 (Comp. St. §§ 1123, 7687–7695), has the power, irrespective of any statute, to punish for contempt, even if it were not a court of the United States, within the meaning of Rev. St. § 725 (Comp. St. § 1245), and it may impose a sentence of imprisonment for six months; not being limited by the power vested in consuls by Act Cong. June 22, 1860 (Rev. St. § 4104 [Comp. St. § 7619]).

In Error to the United States Court for China; Charles S. Lobingier, Judge.

Criminal prosecution by the United States against Williams S. Fleming. From a judgment adjudging the defendant guilty of direct contempt, he brings error. Affirmed.

William S. Fleming, of Shanghai, China, and Garret W. McEnerney and Andrew F. Burke, both of San Francisco, Cal., for plaintiff in error.

John T. Williams, U. S. Atty., of San Francisco, Cal. (Warren Gregory, of San Francisco, Cal., of counsel), for the United States.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

GILBERT, Circuit Judge. On July 28, 1921, the assistant United States attorney for the district of China filed in the court below an information charging the plaintiff in error, who will hereinafter be designated the defendant, with the offense of criminal libel. When called upon to plead to the information the defendant, who was an attorney licensed to practice in the court below, filed a petition and motion for change of venue, and an affidavit in which certain allegations of fact were verified by his own oath. Among the allegations therein contained are, in substance, the following: That the judge of the court below was prejudiced against the defendant and in favor of the complaining witness in the criminal charge; that the proceeding against the defendant was instituted by said complaining witness, with the connivance, consent, and assistance of the said judge; that said judge was a party to the prosecution and directly interested therein; that the said judge was a party to a crime of embezzlement, committed by one Earl B. Rose, on or about January 27, 1919; that the defendant had recently filed with the Department of State in Washington charges of official misconduct against the said judge; that the said judge conspiring with others to obstruct and impede the investigation of said charges had caused a meeting of the Far Eastern American Bar Association to be called, intending at said meeting to slander and defame the defendant, and procure the appointment of a committee to investigate his professional conduct; that the said judge and his coconspirators well knew that there was nothing in the defendant's conduct which should be the subject of investigation; that the purpose was to injure and defame him, and to conceal the connection of said judge and his coconspirators with the said crime of embezzlement; and that the said judge at the said meeting of the Bar Association falsely, maliciously, and with intent to injure and defame the defendant made certain charges against the defendant.

The motion and affidavit were read in open court, and thereupon the court called upon the defendant to show cause whey he should not be punished for direct contempt committed deliberately, openly, and intentionally in the presence of the court. The defendant asserted that he was justified by law in presenting his motion and affidavit. After hearing the defendant at some length in his oral defense of the charge of contempt, the court, among other things, observed:

"So far as the statements in regard to myself are concerned, they are absolutely false and the product of a diseased imagination."

The court found that the defendant's conduct was a direct contempt committed in the presence of the court, deliberately, intentionally, and with premeditation, and adjudged the defendant guilty of contempt of court, and sentenced him to imprisonment for six months.

[1, 2] It is contended that the defendant was within his rights in presenting to the court below the motion for a change of venue on the ground of the bias and prejudice of the judge, together with a supporting affidavit setting forth the facts, and that to do so and to read the said papers in open court was not contempt of court, citing the decision of this court in Tjosevig v. United States, 255 Fed. 5, 166 C. C. A. 333. In the case so cited we held that section 21 of the Judicial

Code (Comp. St. § 988) was not applicable to a territorial court of the United States, but in view of the recognition by Congress of the propriety of the proceeding provided for in that section we reached the conclusion that, notwithstanding that there was no provision of law whereby a judge of a territorial court could be disqualified by reason of bias or prejudice to sit in any pending case, it was not contempt per se to make application in respectful language and in a respectful manner to such a judge before whom a case was pending requesting that another judge try the case. That conclusion was influenced by the fact that in the territory of Alaska a judge who deems himself disqualified to sit in any case may call in another judge of the territory to try the case. But in the case at bar the defendant was well aware that there was no court to which the case could be transferred and that no other judge could be called in to hold the United States Court for China. He knew that to present such a motion was at best to perform an idle act. In addition to that, the motion and the accompanying affidavit were not only disrespectful, but were scandalous, insulting, libelous, and contemptuous. They were a direct affront to the court, and their tendency was obviously to obstruct the administration of justice. In such a case no formal charge, or citation, or answer is required. A summary inquiry and a record of the finding and punishment are all that are necessary to constitute due process of law. Ex parte Terry, 128 U. S. 289, 9 Sup. Ct. 77, 32 L. Ed. 405; Savin, Petitioner, 131 U. S. 267, 9 Sup. Ct. 699, 33 L. Ed. 150; Brown v. United States, 196 Fed. 351, 116 C. C. A. 171.

[3] But the defendant contends that the proceeding lacked due process of law in that no proof was taken of the untruth of the charges contained in his affidavit. In order to punish the defendant's contempt it was not necessary to take the testimony of witnesses to show that the charges made by the defendant were untrue. The punishment was lawfully imposed in the exercise of the court's power to preserve its dignity and decorum in the administration of justice. But if, indeed, the court was required to hear proof that the charges were wanton and unsustained by fact, the record shows that upon a hearing held a few days later on the defendant's motion for reduction of the punishment, and consequently while the contempt proceeding was still pending, the court below in denying the motion took into consideration several affidavits which were filed, and in which were denied all the charges which the defendant had made against the judge of the court.

[4] It is contended that the court below was without jurisdiction to impose a sentence of imprisonment for six months; that the only power vested in that court to punish for contempt was that which was given to consuls by the Act of Congress of June 22, 1860 (Revised Stats. § 4104 [Comp. St. § 7649]). That statute limited the authority of consuls in punishing for contempt to a fine of $50 and imprisonment for 24 hours. The United States Court for China was created by the Act of June 30, 1906 (34 Stat. 814 [Comp. St. §§ 1123, 7687–7695]). Section 1 of the act gives to the court—

"exclusive jurisdiction in all cases and judicial proceedings whereof jurisdiction may now be exercised by United States consuls and ministers, * * * except in so far as the said jurisdiction is qualified by section 2 of this act."

Section 2 qualifies section 1 by reserving to the consuls of the United States in China jurisdiction in civil cases where the amount in controversy does not exceed $500, and in criminal cases where punishment may not exceed a fine of $100 or imprisonment for 60 days, or both, but provides that from all judgments of the consular courts an appeal may be taken to the United States Court for China. Section 4 contains the provision on which the defendant herein relies, which is:

"The jurisdiction of said United States court, both original and on appeal, in civil and criminal matters, and also the jurisdiction of the consular courts in China, shall in all cases be exercised in conformity with said treaties and the laws of the United States now in force in reference to the American consular courts in China."

But that provision is limited and controlled by the following:

"But in all such cases when such laws are deficient in the provisions necessary to give jurisdiction or to furnish suitable remedies, the common law and the law as established by the decisions of the courts of the United States shall be applied by said court in its decisions and shall govern the same subject to the terms of any treaties between the United States and China."

That court was given, among other powers, the power to entertain appeals from consular courts which under the act of 1860 had been vested in the United States minister for China. In entertaining such appeals no limitation had been placed by law upon the power of the minister to punish for contempts. The power given to the consuls to punish for contempt was not a suitable remedy to enforce the respect due to the United States Court for China or to compel obedience to its orders. It is a court of record having a clerk and a seal. The act further provided that it should have a district attorney and a marshal with the authority possessed by corresponding officers of District Courts in the United States, as far as might be consistent with the laws of the United States and said treaties. It provided that the judge of the said court and the district attorney should be lawyers of good standing and experience, and that all of said officers should be appointed by the President, by and with the advice and consent of the Senate. Again by "the common law and the law as established by the decisions of the courts of the United States," the United States Court for China, even if it were not a court of the United States within the meaning of section 725, Rev. Stats. (Comp. St. § 1245), had power irrespective of any statute to punish for contempt; that power being inherent in the nature and constitution of such a court. United States v. Hudson, 7 Cranch, 32, 3 L. Ed. 259; Ex parte Terry, 128 U. S. 289, 305, 9 Sup. Ct. 77, 32 L. Ed. 405.

The judgment is affirmed.