[L. A. No. 17610. In Bank.—February 27, 1941.]

DAVID E. HUME, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

David E. Hume, *in pro. per.*, and Wyman G. Reynolds and Bruce W. Teagarden for Petitioner.

Earl Warren, Attorney-General, Herbert E. Weinig, Lewis Drucker, Deputies Attorney-General, J. H. O'Connor, County Counsel and Ned Marr, Deputy County Counsel, for Respondents.

CURTIS, J.—This is a proceeding by *certiorari* to review an order of the Superior Court of Los Angeles County convicting the petitioner, David E. Hume, of contempt of court. The proceedings against petitioner were commenced by the filing of an affidavit by Warren Olney, Deputy Attorney-General of the State of California, setting forth in four separate counts the conduct of petitioner which was alleged to be contemptuous.

The circumstances leading up to the contempt proceedings may be briefly stated as follows: On May 7, 1940, a complaint was filed in the Superior Court of Los Angeles County by the Attorney-General of the State of California to abate a public nuisance, in which the Piedras Negras Broadcasting Company of Tia Juana, Mexico, was named as one of several defendants. The substance of said complaint was that the several defendants named therein were acting in furtherance of a conspiracy to foster and promote the business of making and accepting bets and wagers and pool selling and bookmaking on the results of horse races in violation of section 337a of the Penal Code of this state. The complaint alleged that the defendants were conspiring with one another and with a large number of owners and operators of pool selling and bookmaking establishments and with patrons of said establishments within the state to the end that the defendants should sell and supply "scratch sheets" and rapid, up-to-the-minute horse racing news and information to said establishments and to their patrons thereby encouraging, inducing and facilitating unlawful gambling on horse races in the said establishments. The *modus operandi,* so the complaint alleged, was as follows: Certain of the defendants would print and publish in the county of Los Angeles a daily supply of "scratch sheets" which consist of small pieces of paper having printed thereon, the date and the names of all race tracks at which races are held in the United States, Republic of Cuba, and Dominion of Canada, followed by a list of the names and post positions of all horses and jockeys entered in each race, the betting odds, and other information concerning such races, including "tips" as to the probable winners. There was also printed on each "scratch sheet" a number opposite the name of each horse, said number being used to designate the horses, so as to make more rapid, reliable, convenient and secret the transmission of horse racing

information. The Piedras Negras Broadcasting Company, owned by certain individual defendants and operating Radio Station XELO, located just over the state line in Tia Juana, Mexico, would throughout the day furnish to the buyers of said "scratch sheets," rapid, last-minute horse racing news and information by means of a radio broadcast given in code. In said radio broadcast none of the horses was referred to by name, but the horses were designated by numbers, the number used being identical with the number printed opposite the respective names of the horses on the "scratch sheets". These broadcasts were given in the English language and were obviously intended to be received and understood in the State of California, since the other radio broadcasts from the same station were in Spanish, the official language of the Republic of Mexico. The complaint alleged that the sole use of said "scratch sheets" was to encourage, induce and facilitate unlawful gambling on horse races in said pool selling and bookmaking establishments, and that the promotion of said unlawful business by defendants was contrary to the established public policy of the State of California and should be abated. The Piedras Negras Broadcasting Company was never served in said action. It was apparently the theory of the Attorney-General that although Radio Station XELO was outside the jurisdiction of the State of California, nevertheless the individual defendants might possibly be served with summons within the state and that if a court of equity obtained jurisdiction of the parties, it could compel them to abate said nuisance notwithstanding the fact that one of the links to the project, the radio station, was situated outside of the physical jurisdiction of the court. (*California Dev. Co.* v. *New Liverpool Salt Co.* [*Salton Sea cases*], 172 Fed. 792 [97 C. C. A. 214] [*certiorari* denied 215 U. S. 603, 30 Sup. Ct. 405, 54 L. Ed. 345].)

Upon the verified complaint and points and authorities, Judge Emmet H. Wilson issued a temporary restraining order and an order to show cause returnable before him on May 13, 1940. At the hearing of the order to show cause David E. Hume, a member of the Bar of Texas, but not admitted in California, was granted leave to appear as attorney for certain defendants. He proceeded to represent them by filing a "Special Appearance on the Matter of the Order to Show Cause and Temporary Restraining Order." Upon his motion, the order to show cause was continued to May 20, 1940.

On said date David E. Hume appeared before said court, and argued in opposition to the order to show cause, but presented no evidence, although an opportunity was afforded him to do so. Thereupon the matter was submitted. Pending the determination of the issues raised by the order to show cause, David E. Hume caused to be filed on June 5, 1940, in the United States District Court, Southern District of California, Central Division, a complaint signed and sworn to by him seeking to enjoin the prosecution of the injunction proceedings against the Piedras Negras Broadcasting Company and its agents in the state court. Subsequently on June 8, 1940, he filed an amended complaint. An order to show cause was issued out of the federal court directed to Emmet H. Wilson, as Judge of the Superior Court of Los Angeles County, and to the other defendants, including Earl Warren, Attorney-General of the State of California, and Warren Olney, Deputy Attorney-General.

Before the hearing in the federal court on June 12, 1940, the Superior Court of Los Angeles County made its rulings on all matters in the action pending before it and granted a preliminary injunction against those defendants who had been served with process, but did not grant any preliminary injunction or take any action with respect to Piedras Negras Broadcasting Company and one of the defendants in said action who had not been served with any process. The trial of said action was then set for August 16, 1940, at the request of David E. Hume. On June 20, 1940, David E. Hume caused to be filed in the Federal District Court, in support of his amended complaint, an affidavit of Phillip Tapper. Subsequently upon motion of the defendants, said action in the Federal District Court was dismissed. Thereafter the accusatory affidavit charging the petitioner with contempt was filed by Warren Olney in the Superior Court of Los Angeles County. The basis of said charge of contempt against the petitioner was the filing of the complaint, the filing of the amended complaint and causing the affidavit of Phillip Tapper to be filed in the Federal District Court. The accusatory affidavit alleged that the allegations contained in said documents were "impertinent, scandalous, insulting, contumacious, imputing partiality and improper motives and reflecting upon the integrity of the court and the judge thereof," and were false in fact and were known to petitioner to be false in fact at the time they were made.

The complaint, upon which the first count of the accusatory affidavit was based, contained the allegations that upon the hearing to show cause in the respondent court, the respondent court refused to hear any proof offered by petitioner; that petitioner feared the respondent court contemplated rendering a decision which would prevent the said company from proving the falsity of the allegations of the complaint; that upon securing jurisdiction the respondent court and the Attorney-General and his deputy intended to postpone the actual hearing of the action until the Piedras Negras Broadcasting Company would be forced to go out of business because of its inability to broadcast news of race track events; and that because of the prejudice and local influence, the petitioner would be unable to obtain justice in said court or any court in California. The amended complaint, the basis of Count Two, contained almost identical allegations, with the added averment that the respondent court would contrive to continue to keep the matter under advisement without decision for a period of ninety days to prevent trial, and thereafter to secure other postponements, until the end of the racing season, with the result that the business of the broadcasting company would be destroyed. While the causing of the filing of the affidavit of Phillip Tapper constituted but one act, this affidavit was made the basis of two separate counts for contempt based upon the different character of two of the allegations contained therein. The first of these allegations which was the basis of Count Three of the accusatory affidavit was to the effect that while the respondent court knew that the acts alleged in the complaint to state a public nuisance did not constitute a nuisance under the laws of the State of California, nevertheless, said court pretended to believe that they did constitute a nuisance, and had entered into an agreement with counsel for plaintiff to make it appear that a conspiracy and confederation existed between the parties defendant, and said respondent court and attorney for plaintiff intended to acquire jurisdiction of the Piedras Negras Broadcasting Company as if for the violation of the statutes defining nuisances, and intended to hold all officers of said corporation if apprehended for conspiracy to commit a nuisance, although there was no legal justification for such action. The other allegation of said affidavit of Phillip Tapper, which was the basis of Count Four, was to the effect that upon the hearing said court

would decline to notice or take into consideration any evidence except allegations of the complaint filed by the attorneys for the plaintiff, and would issue an injunction against the Piedras Negras Broadcasting Company, and its officers, if served with summons, without hearing any evidence they might desire to present and without taking into consideration anything except the bare allegations of the complaint.

Upon the filing of the accusatory affidavit, the respondent court issued its order to show cause why he should not be adjudged guilty of contempt, directed to petitioner. After a hearing, the respondent court on July 1, 1940, found petitioner guilty of contempt on all four counts, and fined him the sum of $250 upon each of said counts with the alternative provision of imprisonment in the county jail of one day's imprisonment for each $2 of said fine. The court also vacated and set aside its order theretofore made permitting petitioner to appear as an attorney in the action and precluded him from appearing at any time in the future as an attorney in any other action before said court. Petitioner served three days' imprisonment and on July 3d paid his fine under protest. ■ As the fine was paid under protest, the question has not become moot by virtue of said payment. (*Dreher* v. *Superior Court,* 124 Cal. App. 469, 477 [12 Pac. (2d) 671].) After application to the District Court of Appeal, Second District, Second Division, for a writ of prohibition and for a writ of *habeas corpus,* both of which were denied without opinion, application by petitioner for a writ of *certiorari* was made to this court.

■ The sole question here before us is one of jurisdiction of the trial court to render the judgment under review. If the trial court in the rendition of said judgment acted within its jurisdiction, the inquiry ends, and the judgment of the trial court must be affirmed. If, however, the trial court either had no jurisdiction to pronounce said judgment or exceeded its jurisdiction in doing so, then the proceedings should be annulled. (*Bridges* v. *Superior Court,* 14 Cal. (2d) 464 [94 Pac. (2d) 983]; *Otis* v. *Superior Court,* 148 Cal. 129 [82 Pac. 853]; *People* v. *Latimer,* 160 Cal. 716 [117 Pac. 1051].)

■ We are satisfied that the accusatory affidavit filed by Warren Olney instituting said proceedings was sufficient to give the respondent court jurisdiction to hear the matter of petitioner's contempt, and the facts found by respondent

court to be true were adequate to sustain the respondent court's judgment of contempt.

There is no merit in petitioner's contention that the accusatory affidavit was insufficient in that it failed to allege the intention of petitioner to commit contempt. The accusatory affidavit contains allegations with respect to each of the contemptuous statements covered by each of the four counts that said contemptuous allegations were false in fact and were known by David E. Hume to be false in fact at the time he uttered them. This was a sufficient averment of the intent of petitioner. (*In re Jarvis*, 57 Cal. App. 533, 538 [207 Pac. 494].)

An examination of the allegations of the complaint, the amended complaint and the affidavit filed by petitioner clearly confirms the conclusion that said statements were contemptuous in that they reflected upon the integrity of the trial court and the judge thereof, imputing collusion of the judge with the Attorney-General to postpone improperly the hearing in said matter, and to delay the decision therein, and to decide deliberately the matter regardless of the law. To charge the trial judge with such improper motives and conduct was to charge him with being wholly lacking in the fundamental basic attributes of a judicial officer. Petitioner has made some slight attempt to explain said allegations in such a way as to give them a meaning different from that which plainly appears on their face. But we are not inclined to give much credence to said explanation.

The chief defense to said charge of contempt relied upon by petitioner is in the nature of a claim that said allegations were privileged because they were made by petitioner in an effort to secure a removal of the cause from the state court to the federal court, which claim for removal to the federal court was based primarily upon the diversity of citizenship. However, the fact that the alleged contemptuous statements were contained in pleadings or other papers filed in court does not furnish any excuse or defense against the charge of contempt. It is well settled that contempt may be committed by incorporating impertinent, scandalous, insulting or contemptuous language reflecting on the integrity of the court in pleadings, motions, notice of motions, affidavits, and other papers filed in court. (13 Cor. Jur., pp. 31, 32; *Lamberson* v. *Superior Court*, 151 Cal. 548 [91 Pac.

100, 11 L. R. A. (N. S.) 619]; *In re Lapique,* 26 Cal. App. 258 [146 Pac. 690]; *Hallinan* v. *Superior Court,* 27 Cal. App. (2d) 433 [81 Pac. (2d) 254].) ▮ Neither does the fact that some of the contemptuous statements were contained in an affidavit of a third party caused to be filed by the attorney afford any defense to the attorney. By procuring the filing of an affidavit containing contemptuous statements, he became equally guilty with the affiant. (*Lamberson* v. *Superior Court, supra.*)

It is true that, based upon the statutory right conferred by subdivision 4 of section 170 of the Code of Civil Procedure, any party to an action may object to a judge upon the ground that he is so prejudiced and biased as to be incapable of trying the cause fairly and impartially, and it has been held that such party may support his objection by affidavit showing bias. (*Works* v. *Superior Court,* 130 Cal. 304 [62 Pac. 507]; *Webb* v. *Superior Court,* 28 Cal. App. 391 [152 Pac. 957].) Prior to the amendment to said code section no such right existed. (*In re Jones,* 103 Cal. 397 [37 Pac. 385].) But it is also true that the allegations made therein must be pertinent and material and must set forth specifically the *facts* upon which the charge of bias and prejudice is based. (*Works* v. *Superior Court, supra; Lamberson* v. *Superior Court, supra.*) ▮ The contemptuous allegations contained in the pleadings filed by the petitioner and the affidavit procured to be filed by him do not come within the scope of the claimed privilege. In the first place, the Piedras Negras Broadcasting Company, being an alien, is not within the provisions of the removal statute (sec. 71, Title 28, U. S. C. A.), as there is no provision therein that where an alien is a party, a removal is authorized on the ground of prejudice or local influence. (See note 617, section 71, Title 28, U. S. C. A.) Not being entitled to a removal on this ground, the allegations with reference thereto were neither pertinent nor material. (*Fleming* v. *United States,* 279 Fed. 613, 615.) An examination of the documents filed in the federal court also clearly shows that no facts are set forth giving any basis or foundation for the charges made in said documents against the respondent judge. Petitioner at the hearing testified that he had been informed by certain persons that the situation was that set up by him in the documents filed in the Federal District Court, but gave no information as to the identity of such persons, and

utterly failed to state any fact which would substantiate the truth of the charges filed by him on information and belief. The language employed in *Lamberson* v. *Superior Court*, 151 Cal. 458, 463 [91 Pac. 100], which involved an affidavit of prejudice filed against a state trial judge under section 170 of the Code of Civil Procedure, is, we think, singularly appropriate to the instant case, as the cases are in this regard strikingly similar:

" . . . It (the affidavit) states the mere belief of Bashore, without any supporting fact, . . . the whole declaration is but the purported belief of this aged invalid, with no attempt to state even the source of that information or origin of that belief. It cannot impress the unprejudiced mind as being other than a deliberate intent to insult and defame the judge. Let it be understood that we are not here declaring that if a judge has in fact indulged in corrupt practices, or has in fact given a ruling or decision through a corrupt motive, those facts may not be stated. They may be. And they would be prepotent evidence of bias and prejudice. But it may not for one moment be countenanced that, without supporting facts, lawyer or litigant may wantonly charge a judge with corrupt and improper motives, and seek protection from the just consequences of such outrage under the shield of the code provision. (Citing cases.) So, while it is true that matters which are pertinent to the consideration and which are charged as facts are admissible, without reference to their effect upon the reputation of the judge, or of any one else, it is equally true that neither attorney nor litigant has any right to present such degrading accusations under the guise of mere belief, without the aid of a single supporting fact. (Citing case.) "

The filing of said documents in the instant case wholly unsupported by any facts to sustain them, was entirely unwarranted, and the trial court was clearly justified upon the showing made to adjudge petitioner in contempt therefor.

█ Petitioner argues that "dividing the judicial proceedings into four parts constitutes plural punishment for a single act." But we are satisfied upon the authority of *Lindsley* v. *Superior Court*, 76 Cal. App. 419, 433 [245 Pac. 212], *Blodgett* v. *Superior Court*, 210 Cal. 1 [290 Pac. 293, 72 A. L. R. 482], and *In re Shuler*, 210 Cal. 377 [292 Pac. 481], wherein the court held that separate publications of contemptuous matters constituted distinct and separate of-

fenses, that the trial court was justified in finding petitioner guilty of contempt upon each of the first three counts. But inasmuch as only one affidavit by Phillip Tapper was procured to be filed by petitioner, we are somewhat doubtful as to the propriety of dividing the charge of contempt with reference to the filing of this affidavit into separate counts and the court's finding the petitioner guilty of contempt upon each of said counts. We are cited to no authority supporting the practice of setting up in an accusatory affidavit separate allegations in the same document as separate counts, and since the filing of said affidavit constituted but a single act, we are of the opinion that the proper practice would have been to combine Count Three and Count Four in the accusatory affidavit.

The judgment of the trial court finding petitioner in contempt upon the first three counts is affirmed. The proceeding in which petitioner was found guilty of contempt under the fourth count is dismissed.

Houser, J., Traynor, J., Shenk, J., and Carter, J., concurred.

EDMONDS, J., Dissenting.—The record of this proceeding shows, to my satisfaction, that the petitioner's actions in connection with the proceeding initiated by him in the federal court went far beyond the limits of professional ethics and cannot be justified as being either necessary or desirable for the protection of his client's interests. However, the legislature has, by statute, declared that no speech or publication reflecting upon a judge shall be punished as a contempt of court unless made in the immediate presence of the court while in session and in such manner as to actually interfere with judicial proceedings. (Sec. 1209, Code Civ. Proc.) As I have heretofore pointed out, in my opinion, the legislature may, within constitutional guarantees, take from judicial officers the authority to punish persons for acts not committed in the presence of the court which might otherwise amount to a constructive contempt, and I can find no basis for striking down the code provision as a limitation upon inherent judicial power. (*Times-Mirror Co.* v. *Superior Court*, 15 Cal. (2d) 99 [98 Pac. (2d) 1029].)

For these reasons, I believe that each of the judgments of contempt should be annulled.

A petition for a rehearing was denied March 28, 1941. Edmonds, J., voted for a rehearing.