[L. A. No. 18010. In Bank. Feb. 2, 1942.]

LEONARD J. MEYBERG, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

[L. A. No. 18011. In Bank. Feb. 2, 1942.]

MITCHELL S. MEYBERG, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

[L. A. No. 18012. In Bank. Feb. 2, 1942.]

LORRAINE K. MEYBERG, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

[L. A. No. 18013. In Bank. Feb. 2, 1942.]

JAMES MEYBERG, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Mitchell S. Meyberg, *in pro. per.*, R. K. Gandy, R. B. Turnbull and P. M. Joseph for Petitioners.

J. H. O'Connor, County Counsel, and Douglas DeCoster, Deputy County Counsel, for Respondent.

SHENK, J.—Mitchell S. Meyberg, Leonard J. Meyberg, Lorraine K. Meyberg, and James Meyberg separately petitioned for the writ of certiorari to review orders of the respondent court holding them in contempt of court. Fines imposed by the orders were paid under protest.

The payment of the fines under protest does not preclude a consideration of the question whether the respondent court has committed an excess of jurisdiction in making the orders presented for review. (*Hume* v. *Superior Court*, 17 Cal. (2d) 506 [110 Pac. (2d) 669].) The several petitions are consolidated for determination of the questions involved.

Leonard J. Meyberg and Lorraine K. Meyberg are husband and wife. Mitchell S. Meyberg is the father of Leonard and James.

One Lazare M. Kauffman and Lorraine K. Meyberg are brother and sister. Their father, Leon Kauffman, procured the organization of a family corporation known as Leon, Inc. Upon the death of their parents, Lazare and Lorraine each received by decree of distribution 2250 shares of the corporate stock. Each also claimed a gift of 250 shares from the father in his lifetime. Lorraine transferred to her husband, Leonard, 250 of her shares. A controversy arose as to the validity of the issue to Lazare Kauffman of the entire 250 shares claimed to have been given to him by his father, the conten-

tion of the Meybergs being that Kauffman owned 2475 shares and the Meybergs 2525 shares. A list of stockholders was prepared by Secretary Lorraine K. Meyberg in anticipation of the annual stockholders' meeting of January 15, 1941, showing stockholdings in accordance with the Meyberg claims. Kauffman did not attend that meeting. The meeting showed attendance by Mitchell S. Meyberg and James Meyberg as proxies for Lorraine and Leonard Meyberg. The by-laws of the corporation required the representation of fifty-one per cent of the issued and outstanding stock to constitute a quorum. Because of the asserted absence of a quorum the meeting was adjourned to January 27, 1941.

On January 24, 1941, Lazare Kauffman commenced an action against Lorraine and Leonard Meyberg to obtain a declaration of his right to vote 2500 shares of the stock of Leon, Inc. In that action the respondent court issued an order requiring the defendants to appear on February 3, 1941, and show cause why they should not be restrained during the pendency of the action (1) from permitting more than 5000 shares of stock to be voted in person or by proxy at any meeting of the stockholders of the corporation; (2) from voting in person or by proxy more than 2500 shares; and (3) from directly or indirectly interfering or in any way obstructing the plaintiff from voting in person or by proxy 2500 shares of the stock; and enjoining any of said acts pending the hearing on the order to show cause. The order was dated January 24, 1941, and was duly served upon the defendants prior to the time of the adjourned meeting.

At the adjourned meeting on January 27, 1941, Kauffman was present in person, and Mitchell and James Meyberg were present as proxies of Lorraine and Leonard Meyberg. The temporary restraining order was read at the meeting. Kauffman was president of the corporation, but James Meyberg presided under a claimed appointment as chairman made at the January 15th meeting. Three questions were voted on prior to the election of directors. A motion to adjourn the meeting indefinitely was defeated by the Kauffman vote of 2500 shares in its favor and the Meybergs' vote of 2500 shares in opposition. The chairman's announcement was that the motion "not having received a majority vote of the shares present is defeated." A motion to adjourn to February 5, 1941, a date subsequent to the return date of the order to show cause in the Kauffman action, likewise resulted in a tie

vote. The chairman announced that the motion "having received 2500 shares, which is not a majority of the shares present, is defeated." A motion that the voting on the election of directors be conducted on a non-cumulative basis was "unanimously carried by 5000 shares," 2500 of those shares having been voted by Kauffman and 2500 by the Meybergs.

The board of directors consisted of three members. Kauffman cast 1250 votes for himself and 1250 for one David Pokross. The Meybergs cast 1250 for Leonard and 1250 for Lorraine. The inspector of election (Mitchell S. Meyberg, so appointed at the January 15th meeting), declared however that inasmuch as it had been discovered that 50 shares had been issued without authority to Kauffman, only 1225 votes would be counted in favor of David Pokross. A meeting of the newly elected directors immediately followed, attended by Lorraine and Leonard Meyberg, at which Leonard was elected president of the corporation and Lorraine secretary-treasurer.

The failure to permit Kauffman to vote the full 2500 shares in the election of directors was the basis for holding the petitioners in contempt of the court's temporary restraining order and for the imposition of the fines paid under protest. Any merit in the differences between Kauffman and the Meybergs is not a matter for investigation and consideration in this proceeding. The only question presented here is whether the respondent court regularly pursued its authority in the contempt proceeding, which is the proceeding here under review. (Code of Civil Procedure, sec. 1074.)

The record in the contempt proceeding shows that the contempt order was based on the charging affidavit of Kauffman and the answering affidavit of each of the four defendants in the contempt proceeding, and that all the defendants were present at the hearing.

It is obvious that the only portion of the restraining order which could be said to have been violated was that portion which enjoined defendants from "directly or indirectly interfering or in any way obstructing plaintiff from voting in person or by proxy 2500 shares of said stock at any meeting of the stockholders of said corporation."

The first contention of the petitioners is that the complaint in the action for an injunction does not state facts sufficient to constitute a cause of action; that the restraining order issued is for that reason a nullity, and that the contempt order based on a violation of the alleged void restrain-

ing order was in excess of the respondent court's jurisdiction. In other words, the petitioners contend that the complaint in the Kauffman action shows that no justiciable controversy exists between the parties and that the plaintiff's remedy, if any, is pursuant to the provisions of section 315 of the Civil Code relating to contested elections of officers of a corporation, citing *Fritz* v. *Superior Court,* 18 Cal. App. (2d) 232 [63 Pac. (2d) 872]. However, no election had taken place which was the subject of contest at the time the action was commenced by the plaintiff Kauffman. In that action Kauffman sought to enjoin an alleged unwarranted interference with his right to vote certain shares of stock. Involved in the issues in that action was the question of the plaintiff's ownership of the shares. Courts of equity have power to protect the voting rights of shareholders as an incident of property ownership. (*Lord* v. *Equitable Life Assurance Society,* 194 N. Y. 212 [87 N. E. 443, 22 L. R. A. (NS) 420] ; *Harvey* v. *Harvey,* 290 Fed. 653 ; 14 Cor. Jur. pp. 898, 903, and cases cited.) Section 316 of the Civil Code, by implication recognizes this equitable remedy by providing that ''Shares, the voting of which at said meeting has been enjoined . . . shall not be counted to make up a quorum for said meeting.'' If a court of equity has the power to enjoin the voting of stock it also has the power to restrain unlawful interference with a stockholder's right to vote stock owned by him. There was no showing in the contempt proceeding that the court in the Kauffman action did not acquire jurisdiction of the subject matter and of the parties, and any defensive matter interposed to create factual issues is not a subject for investigation in the contempt proceeding, or in this proceeding. In the absence of any showing that the court exceeded its jurisdiction the orders in contempt proceedings are conclusive (sec. 1222, Code Civ. Proc.; *People* v. *Latimer,* 160 Cal. 716 [117 Pac. 1051] ; *Paddon* v. *Superior Court,* 65 Cal. App. 34 [223 Pac. 91].)

█ It is also contended that the restraining order was an unwarranted interference with the internal affairs of a foreign corporation and an attempt to direct or control the election of directors thereof. As noted, the court in fact did not attempt to remove any officer or director or suspend the exercise of any corporate function or official privilege of any officer of the corporation. The order restraining any interference with the plaintiff's right to vote certain shares of stock

pending a hearing on his right to an injunction is an exercise of the court's power to protect an asserted property right of the plaintiff and is not an unwarranted interference with the internal affairs of Leon, Inc. The case of *Southern Sierras Power Co.* v. *Railroad Commission,* 205 Cal. 479 [271 Pac. 747], affords no support for the petitioners' contention. In that case it was held under the facts there involved, that a direction to permit the issuance of certain stock would be an unwarranted interference with the internal affairs of the corporation. The petitioners also rely on *Royal Consolidated Mining Co.* v. *Royal Consolidated Mines Co. Ltd.,* 157 Cal. 737, 757 [110 Pac. 123, 137 Am. St. Rep. 165], and the general rule therein stated "that the test of the right to vote as a stockholder at corporate meetings is the ownership of shares, as disclosed by the proper record books of the corporation," and the provisions of section 320a of the Civil Code to the effect that "only persons in whose names shares entitled to vote stand on the stock records of the corporation" on the day specified therein are entitled to vote at meetings of stockholders. The application of that rule and code provision does not call for annulment of the contempt orders, here under review. Any question of stock ownership is a matter for adjudication in the action for the injunction. The petitioners have not shown any invalidity in the restraining order.

█ There is no merit in the contention that the plaintiff's charging affidavit did not allege sufficient facts to support a judgment in contempt. The facts there averred clearly showed that the plaintiff was permitted to vote only 2475 shares for the directors of the corporation when the restraining order forbade any interference with his alleged right to vote 2500 shares, until the issues in the action were adjudicated. █ In that connection the petitioners also claim that an uncertainty existed in the language of the restraining order pursuant to which it is contended that the conduct of the defendants could not be said to have been contumacious. The petitioners refer to certain language in the order which we have italicized in the following quotation: "Pending the hearing on this order to show cause, you and each of you are, pending any increase in the authorized capital of said corporation, *and pending the ownership by plaintiff, Lazare M. Kauffman of 2500 shares of the stock of said corporation,* restrained and enjoined as follows, . . . (3) From directly or indirectly interferring or in any way obstructing plaintiff from voting in person or by

proxy 2500 shares of said stock at any meeting of the stock-holders of said corporation.'' The petitioners state that they construed this language ''to mean that if the records of the corporation showed that plaintiff was entitled to vote 2500 shares, such right must not be interfered with.'' There is no such ambiguity in the language as would make the order void as a matter of law. The language imposing the restraint, namely, the paragraph numbered ''(3)'', clearly required that the defendants refrain from interfering with the voting of 2500 shares by the plaintiff. The evidence before the court in the contempt proceeding showed that the petitioners so understood the order and that they by their conduct conceded that the plaintiff was the record owner of 2500 shares of stock, (1) when it was declared, at the meeting of January 15, 1941, that a quorum was not represented at the meeting; (2) when the plaintiff was permitted to vote 2500 shares on the question of postponement, first indefinitely and then to a specified date; and (3) when he was permitted to vote 2500 shares on the question whether the voting for directors would be on a cumulative or non-cumulative basis. Consistent with the petitioners' contention that the stockholders' meeting was conducted on the theory that the plaintiff was entitled to vote only in accordance with his stock ownership as shown by the stock records, then, for the purposes of the contempt proceeding at least, they must be deemed by such conduct to have conceded that the stock records showed ownership in the plaintiff to the extent of the 2500 shares specified in the order. This conceded ownership would not cease or change at the moment the matter of election of directors was announced. Furthermore there was no evidence that the petitioners misunderstood the language of the restraining order. ■ The petitioners Lorraine and Leonard Meyberg now assert, and they also alleged in their return to the order to show cause in the contempt proceeding, that they instructed their proxies to obey the order and, specifically, to permit the plaintiff to vote 2500 shares at the postponed stockholders' meeting. The proxies obeyed their instructions and the temporary restraining order only in so far as the restraint on voting the Meyberg stock was concerned. The respondent court was the judge of whether Leonard and Lorraine Meyberg should be purged of the charge by reason of their asserted attempt to comply with the court's order in their instructions to their proxies. The fact that they accepted the election of directors

as participated in by their proxies and thereupon, as such directors, elected themselves sole officers of the corporation indicates an intentional disregard of the court's order.

The petitioners also urge that Kauffman in fact voted only 2475 shares in the election of the directors because his proxy voted the remaining 25 shares. They refer to section 321 of the Civil Code providing that the powers of the proxy shall be suspended "if the person or persons executing such proxy shall be present at the meeting and elect to vote in person." A complete answer to the contention is that Kauffman, although present at the meeting, did not elect to vote in person the shares represented by his proxy. His proxy had voted on previous questions submitted to the meeting as well as on the matter of election of directors, and without any objection raised to the counting of the votes on the previously submitted questions.

The petitioners have failed to show that the respondent court exceeded its authority in the contempt proceeding or that they are otherwise entitled to an annulment of the orders complained of.

The orders are affirmed.

Curtis, J., Edmonds, J., Houser, J., Carter, J., and Traynor, J., concurred.

Petitioner's application for a rehearing was denied March 2, 1942.