Francis J. SALGO et al., Appellants,

v.

Joe W. MATTHEWS et al., Appellees.

Nos. 18094, 18117.

Court of Civil Appeals of Texas, Dallas.

May 17, 1973.

Rehearing Denied July 26, 1973.

Lawrence Fischman, Ben L. Krage, Fischman, Rosenberg, Kasmir & Willingham, Dean Carlton, Dallas, for appellants.

Paul Thorp, Joe W. Matthews, Matthews & Thorp, Dallas, for appellees.

GUITTARD, Justice.

This equitable proceeding involves a proxy contest for control of General Electrodynamics Corporation, a Texas corporation. Stockholders Joe W. Matthews and Paul Thorp, representing the faction opposed to current management, sought the aid of the district court in requiring the president, as chairman of the stockholders' meeting, and the election inspector appointed by him, to accept certain disputed proxies, count the votes of the stockholders cast under these proxies, and declare that the candidates supported by plaintiffs had been elected directors of the corporation. We hold that the court erred in granting injunctive relief, both temporary and final, in absence of any showing that plaintiffs could not have obtained adequate relief by the statutory remedy of quo warranto after the completion of the election.

### Facts

The facts are substantially without dispute. Although defendants, as appellants here, have challenged many of the trial court's findings of fact, none of these challenges appears to be material to this appeal, and we take our statement of the facts from the findings, although we do not accept all of the court's inferences and conclusions.

Before the special stockholders' meeting, proxies had been solicited on behalf of management for a slate of candidates for the board of directors, consisting of the president, defendant Francis Salgo, and four others, and also by an opposing faction for a slate composed of plaintiff Joe Matthews and four others. The meeting was convened on the afternoon of November 8, 1972. Defendant Salgo, acting as chairman of the meeting, appointed defendant Julian Meer, an attorney, as election inspector. Plaintiffs have never denied his authority to act in that capacity, although they question the extent of his authority. The chairman opened the polls and plaintiffs tendered their proxies and ballots to the inspector for examination and tabulation. Before the tabulation was complete a motion was made and carried to adjourn the meeting, but the court found this adjournment to be only a temporary recess. After the recess was called, examination and tabulation of the proxies continued for several hours until discontinued by agreement and was resumed the following morning, November 9. In the course of this process, plaintiffs presented to defendant Meer four proxy documents purporting to have been executed in plaintiffs' favor on behalf of Pioneer Casualty Company, the registered owner of 29,934 shares of stock. Beneficial title to these shares had been transferred to Don Shepherd, who was in bankruptcy, and two of the

proxy documents were signed, "Pioneer Casualty Company By Don Shepherd." Plaintiffs also presented to the inspector an order of the 126th District Court of Travis County, Texas, directing Tom I. McFarling as receiver of Pioneer Casualty Company to give Shepherd a proxy to vote these shares by giving his proxy to plaintiffs Matthews and Thorp, and plaintiffs also presented a proxy document signed by the receiver in accordance with this order. Defendant Meer refused to accept any of these proxies, and their validity is the principal matter in controversy. Defendant Meer also refused to accept two telegraphic proxies aggregating 5,000 shares from stockholders Candis and Wrobliske when plaintiff Thorp presented them to him on the afternoon of November 9.

Examination and tabulation of the proxies and ballots continued until late on November 9, when defendant Meer signed a certificate, which the court found not to be a final and official certificate of the result of the election. On November 10 plaintiffs sought and obtained from the district court an ex parte order temporarily restraining defendants Salgo and Meer from soliciting or accepting any additional proxies or votes, from refusing to accept and count the disputed proxies and ballots, from refusing to close the polls, and from certifying the vote count until the validity of the questioned votes had been determined by the court. The same relief was granted in the form of a temporary injunction on November 13, after hearing both factions.

The cause came on for trial before the court without a jury on December 4, and on December 26 the court issued a final decree ordering defendant Salgo to reconvene the stockholders' meeting before the court on January 15, 1973, for the sole purpose of declaring plaintiff Matthews and the other nonmanagement candidates elected as directors of the corporation and for the purpose of entertaining a motion to adjourn the meeting sine die. The decree recites findings, later repeated in the court's formal findings of fact, to the effect that the disputed proxies of Pioneer, Candis and Wrobliske were duly executed and timely presented to the election inspector, that he should have accepted them, and that when so accepted and the votes under them counted, the result of the voting was to elect plaintiff Matthews and the other candidates of the nonmanagement slate as directors of the corporation. The court further found that the mathematical accuracy of the count and tabulation of proxies by defendant Meer as election inspector was conceded by all parties. According to that tabulation, if the votes of the Pioneer Casualty Company shares and also of the Candis and Wrobliske shares were voted in favor of the nonmanagement candidates, they were elected, but if either the Pioneer votes or the Candis and Wrobliske votes were rejected, then defendant Salgo and the pro-management candidates were elected.

The court's findings also show that in conformity with the final decree, defendant Salgo did on the morning of January 15, 1973, reconvene the meeting in open court and did formally announce the results of the election as ordered by the court, and that the meeting was then adjourned sine die.

Defendants Salgo and Meer have appealed from both temporary injunction and final decree. We advanced submission of the appeal from the final decree and have heard both appeals together.

*Adequacy of relief by quo warranto*

Our question is whether the court was justified in intervening in the elective process or whether plaintiffs had an adequate remedy by quo warranto under Vernon's Tex.Rev.Civ.Stat.Ann. arts. 6253 and 6257 (1970).[1] Defendants contend that the

---

1. These statutes, insofar as pertinent, provide:
   "Article 6253.

If any person shall usurp, intrude into or unlawfully hold or execute . . . any office in any corporation created by

injunctive relief granted, both temporary and final, was improper because plaintiffs have not shown that the statutory remedy was inadequate. We agree. The court's findings on the necessity of extraordinary relief are as follows:

> "72. Unless controlled by this court, Defendants wrongfully would have caused an election and vote upon stockholder proposals favorable to management to have been concluded based upon an inaccurate vote count contrary to the expressed intention of a majority of stockholders who were present in person and by proxy and voting at said meeting, thereby depriving said Plaintiffs and said stockholders of their property right to vote their shares at said meeting in conformity with their final intent and decision and further depriving said stockholders of their right to have management chosen by a majority vote of stockholders control the affairs of GEC from and after the said meeting, all of which constitutes irreparable injury to said parties and against none of which do Plaintiffs and stockholders have an adequate remedy at law."

> "75. The only remedy or relief available to Plaintiffs from the wrongful and oppressive conduct of Defendants during said stockholders meeting was the filing of this lawsuit and the obtaining of the relief granted."

■ Insofar as these findings recite that plaintiffs had no other relief available, they have no support in the record. Plaintiffs have neither alleged nor proved that they could not have established the validity of their proxies in a quo warranto proceeding after completion of the election, or that they could not have obtained full relief in such a proceeding by judgment declaring the correct result of the election and ousting any persons unlawfully holding the office of directors of the corporation. Neither have plaintiffs shown that the affairs of the corporation would have been adversely affected by inability of plaintiff Matthews and the other nonmanagement candidates to take over immediate management of the corporation. Although the court found that defendants were guilty of various irregularities in the conduct of the election, such as failing to take a written ballot on waiver of the reading of the minutes of the preceding meeting, recessing the meeting contrary to agreement on the afternoon of November 8 in the absence of plaintiff Matthews, and holding a private meeting between defendant Meer and defendant Salgo and his attorney late in the evening of November 9 after plaintiffs had departed, the record contains neither pleading, evidence, nor findings showing that any irregularities other than rejection of the disputed proxies, had or would have had any effect on the election. The record shows clearly that if the disputed proxies had been accepted, plaintiff Matthews and the other nonmanagement candidates would have been elected, but that if such proxies were properly rejected, defendant Salgo and the other candidates nominated by current management were properly elected. Since the only real issue is title to the of-

the authority of this State . . . the Attorney General, or district or county attorney of the proper county or district, either of his own accord or at the instance of any individual relator, may present a petition to the district court of the proper county . . . for leave to file an information in the nature of a quo warranto in the name of the State of Texas. If such court or judge is satisfied that there is probable ground for the proceeding, he shall grant such leave and order the information to be filed and process to issue."

"Article 6257.
If any person or corporation against whom any such proceeding is filed shall be adjudged guilty as charged, the court shall give judgment of ouster against such person or corporation from the office or franchise, and may fine such person or corporation for usurping, intruding into or unlawfully holding and executing such office or franchise and shall give judgment in favor of the relator for costs of the prosecution."

fice of director, quo warranto is an adequate remedy. State ex rel. Yelkin v. Hand, 331 S.W.2d 789 (Tex.Civ.App., Houston 1959, writ ref'd n. r. e.); Helsel v. Rodgers, 440 Pa. 516, 269 A.2d 917 (1970).

▇ Plaintiffs argue in support of the decree that under our blended system of law and equity cases should not be decided on traditional grounds of chancery jurisdiction, and that injunctive relief is proper whenever other available remedies are not full, adequate and complete. Plaintiffs also suggest that the relief granted is in the nature of a common-law mandamus against defendants Salgo and Meer as corporate officers. We do not regard this distinction as material in the present context, since mandamus as well as injunction is governed by equitable principles and is an extraordinary remedy which is not appropriate when other relief would be effective and complete. Callahan v. Giles, 137 Tex. 571, 155 S.W.2d 793 (1941); Poten v. Lockhart, 131 Tex. 181, 114 S.W.2d 219 (1938). The appropriateness of extraordinary mandatory relief should be determined without regard to whether the relief granted is mandamus or mandatory injunction.

The requirement of inadequacy of other remedies as a condition of extraordinary mandatory relief rests on sound policy rather than tradition or technicality. This policy is particularly applicable to corporate elections. If, while the meeting is still in progress, opposing factions may take their disputes to court and require judicial determination of the regularity of the proceedings, eligibility of voters and validity of proxies, the affairs of the corporation may be brought to a standstill by restrain-

ing orders, hearings and appeals, courts may be occupied by matters of little or no ultimate consequence, and judicial processes may be employed as tactics for the advantage of one faction or another in their struggle for support of other stockholders. Unless immediate judicial intervention is shown to be essential to protect substantial rights, opposing factions should be required to fight their battles to a conclusion one way or another within the corporate arena before seeking aid of the courts.

▇ We recognize that extraordinary mandatory relief may be granted when other available remedies are not full, adequate and complete. A court may intervene if corporate officers wrongfully refuse to hold an election, or fail to count the votes and declare the result, or are guilty of fraud, coercion, or any other conduct that would frustrate or seriously delay the election process.[2] No such circumstances are shown here.

Plaintiffs seek to invoke the remedy of mandamus to the election inspector recommended in E. Aranow & H. Einhorn, Proxy Contests for Corporate Control 492 (2d ed. 1968). These writers approve judicial intervention to compel election inspectors to change erroneous rulings as to acceptability, validity and tabulation of proxies on the theory that such a remedy best serves the interest of the corporation and its stockholders by enabling the inspectors to announce a result which will be a conclusive determination of the contest, and thus avoid subsequent litigation which might involve expense and absorb the time of executives who should be giving full attention to the duties of management. However expeditious and conclusive may be the rem-

2. Steinberg v. American Bantam Car Co., 76 F.Supp. 426 (W.D.Pa.1948), appeal dismissed as moot, 173 F.2d 179 (3d Cir. 1949); Meyberg v. Superior Court, 19 Cal.2d 336, 121 P.2d 685 (1942); Empire Southern Gas Co. v. Gray, 29 Del.Ch. 95, 46 A.2d 741 (Ch.1946); Lord v. Equitable Life Assur. Soc., 194 N.Y. 212, 87 N.E. 443 (1909); Tunis v. Hestonville, M. & F. P. R. R., 149 Pa. 70, 24 A. 88 (1892); E. Aranow & H. Einhorn, Proxy Contests for Corporate Control 481–488 (2d ed. 1968).

edy recommended by these writers and available in other jurisdictions, no such expeditious remedy was employed here. This record discloses the full range of equitable procedures, including temporary restraining order, motion to dissolve, hearing on motion to dissolve and on application for temporary injunction, interlocutory appeal, trial on merits, and appeal from final decree. This familiar routine, though appropriate when necessary to protect the rights of the parties, cannot be accurately described as a summary remedy by which a controversy arising in a proxy contest can be resolved promptly and conclusively. Although the trial judge acted with commendable diligence and dispatch, the appellate process could not be so accelerated. We originally advanced the submission so that both appeals could be submitted on February 8, but were required to postpone submission to April 12 for completion of the record. In order to prevent the non-management faction from taking over immediate control of the corporation under the decree of December 26, defendants sought to suspend that decree by supersedeas under Texas Rules of Civil Procedure 364(e), but the trial court fixed the amount of the supersedeas bond in excess of $100,000, and this court, after hearing, did not see its way clear to reduce the amount before considering the appeal on its merits. Whether or not the decree has been superseded, it is clear that the normal course of the corporation's affairs has been seriously disrupted for a substantial period of time, regardless of the judgment to be rendered here.

By way of comparison, we have no reason to believe that a quo warranto proceeding commenced immediately after announcement of the result of the election would have been more elaborate or would have consumed substantially more time and expense. The trial judge gives no indication that he would not have acted in a quo warranto proceeding as promptly as he did in this injunction suit. On appeal in quo warranto, Tex.R.Civ.P. 384 shortens the period for filing the record, and rule 781 requires the appellate court to give preference to such cases and determine them "as early as practicable." We conclude that from the point of view of time alone, quo warranto is at least as expeditious a remedy as mandamus or mandatory injunction.

■ Moreover, this litigation, instead of facilitating final resolution of the controversy, has served rather to delay it because the decree now before us merely orders the election inspector to declare the nonmanagement candidates elected as directors and leaves for later litigation final determination of the ultimate question of which slate of candidates has been elected to serve as the board of directors of General Electrodynamics Corporation. This decree does not end the litigation because it does not of itself oust the promanagement directors and install the candidates of the opposing faction, as would a judgment in quo warranto. Hartt v. Harvey, 32 Barb. 55, 62, 19 How.Prac. 245, 252 (N.Y.Sup.Ct.1860); cf. Wells v. Commissioners' Court, 195 S. W. 608 (Tex.Civ.App., El Paso 1917, writ ref'd). The court could not in this suit effectively oust the promanagement directors other than defendant Salgo, since they were not joined as parties and they may still assert the regularity of their election in subsequent litigation. Even apart from the defect of parties, the title to the office of director cannot be finally determined in a proceeding to correct the rulings of the election inspector. The decree correcting his ruling does not bar an action to contest the election on other grounds.

■ No Texas precedents have been found concerning judicial intervention to control a corporate election before announcement of the result. After the election, it is clear under Texas law that quo warranto under Tex.Rev.Civ.Stat.Ann. arts. 6253 and 6257 (1970) is the proper remedy to determine title to an office in a private corporation, and that injunctive relief is not proper unless grounds other than im-

proper declaration of the result are shown. State ex rel. Yelkin v. Hand, 331 S.W.2d 789 (Tex.Civ.App., Houston 1959, writ ref'd n. r. e.); Hyatt v. Mercury Life & Health Co., 202 S.W.2d 325 (Tex.Civ.App., San Antonio 1947, writ ref'd n. r. e.); Bledsoe v. Grand Lodge of United Brothers of Friendship, 53 S.W.2d 73 (Tex.Civ. App., Fort Worth 1932, no writ); De Zavala v. Daughters of the Republic of Texas, 58 Tex.Civ.App. 19, 124 S.W. 160 (Galveston 1909, writ ref'd). Neither is extraordinary relief appropriate by way of mandamus if another effective remedy is available. Poten v. Lockhart, 131 Tex. 181, 114 S.W.2d 219 (1938); Palmer Pub. Co. v. Smith, 130 Tex. 346, 109 S.W.2d 158 (1937). Of particular pertinence to the present case is Wells v. Commissioners' Court, 195 S.W. 608 (Tex.Civ.App., El Paso 1917, writ ref'd), in which candidates for public office sought mandamus to require election officials to canvass the returns of a certain precinct. The court denied this extraordinary relief on the ground that quo warranto was the appropriate remedy and pointed out that even if the officials could be required by mandamus to reopen the returns, accept the votes from the disputed precinct and declare a different result, a new certificate of election would only be prima facie evidence of the right to the office and a suit of some character would still be necessary to oust the persons claiming to hold the office and install plaintiffs in their place. The same reasoning applies to a corporate election and has even greater force when extraordinary relief is sought before the election process is complete.

### Discretion of election inspector

Since plaintiffs have not shown that they would suffer irreparable injury if left to their remedy by quo warranto, the relief granted cannot be justified on the ground that defendant Meer exceeded his authority as election inspector in refusing to accept the Pioneer Casualty Company proxies and count the votes cast under them. Moreover, we hold that the inspector was not subject to judicial control in the performance of his duties because he had discretionary authority to make a preliminary determination of the validity of the proxies for the purpose of tabulating them, counting the votes, and certifying the result, although the correctness of his decision was subject to review after the election by proceeding in quo warranto.

Plaintiffs' contention that the function of an election inspector is purely ministerial rather than judicial has support in opinions from several jurisdictions, but most of the statements to this effect must be taken in context to mean that the decision of the inspector is not binding on the court in subsequent litigation to review the election.[3] Other courts have recognized that election inspectors have a measure of

3. Standard Power & Light Corp. v. Investment Associates, Inc., 29 Del.Ch. 593, 51 A.2d 572 (Sup.Ct.1947); Atterbury v. Consolidated Coppermines Corp., 26 Del. Ch. 1, 20 A.2d 743 (Ch.1941); Gow v. Consolidated Coppermines Corp., 19 Del. Ch. 172, 165 A. 136 (Ch.1933); State v. Coogan, 98 So.2d 757 (Fla.App.1957); In re Lake Placid Co., 274 App.Div. 205, 81 N.Y.S.2d 36 (1948), appeal denied 298 N.Y. 932, 82 N.E.2d 44 (1949); In re Cecil, 36 How.Pr. 477 (N.Y.Sup.Ct. 1869); cf. Bache v. Central Leather Co., 78 N.J.Eq. 484, 81 A. 571 (Ch.1911), denying equitable relief, but observing that inspectors performed only ministerial duties and bylaws could not give them judicial duties which would prevent an inquiry by the courts.

In Young v. Jebbett, 213 App.Div. 774, 211 N.Y.S. 61 (1925), mandamus was issued requiring the inspectors to accept proxies tendered the day after the meeting on the ground that the inspectors had failed to perform a ministerial duty, but the appellate court was careful not to direct the inspectors' decision concerning the validity or effect of such proxies. That case may be distinguished from the present on the theory that acceptance of the proxies on the day after the meeting was a clear ministerial duty, and that in other respects the inspectors were permitted to use their own judgment in determining and announcing the result.

discretion and have refused to disturb their findings even after the election if made fairly, honestly and in good faith.[4] Since the authority of the election inspector here is not defined by statute or bylaw, we have no basis to hold that his decision concerning validity of the disputed proxies cannot be judicially reviewed after the election. However, we do hold that he has discretionary authority to decide such matters for the purpose of making an initial determination of the result of the election. Consequently his exercise of that discretion cannot be controlled by mandamus or mandatory injunction under the established rule that such relief is not available to control the action of an officer in the exercise of discretion or judgment. Beach v. McKay, 108 Tex. 224, 191 S.W. 557 (1917) (mandamus); King v. Guerra, 1 S.W.2d 373 (Tex.Civ.App., San Antonio 1927, writ ref'd) (mandamus); Cain v. City of San Antonio, 28 S.W.2d 190 (Tex.Civ.App., San Antonio 1930, no writ) (mandatory injunction); Baker v. Davis, 227 S.W. 534 (Tex.Civ.App., Beaumont 1921, no writ) (mandatory injunction).

■ Recognition of such discretionary authority on the part of the inspector best serves the interest of stockholders in prompt resolution of proxy contests. The function of the inspector is to determine the result of the election accurately and declare the result promptly so that the affairs of the corporation may go forward, and in performing that function he must make some sort of decision on whatever problems may arise, including validity of proxies tendered to him. That function ought not to be interrupted while opposing factions litigate. If he errs, the losing party may resort to the courts after the election to determine whether the result was properly declared.

■ The importance of such discretion is demonstrated by the problem presented to the inspector in this case. The facts determining validity of the disputed proxies were complex, the law was uncertain, and the lawyers representing the two factions were in sharp disagreement. The inspector, himself a lawyer, was required to exercise judgment, and apparently he exercised that judgment by' refusing to recognize the disputed proxies. In the orderly course of the corporation's affairs he should have been permitted to complete his duties and declare the result of the election before the court attempted to review his decision. Consequently, we hold that the court erred in granting extraordinary mandatory relief.

### Validity of disputed proxies

■ Our holding that an election inspector has discretionary authority to determine the validity of disputed proxies for the purpose of declaring the result of the election should not be interpreted as meaning that he may go beyond the corporate records in determining the identity of stockholders entitled to vote. Defendants argue that the trial court's findings establish that beneficial ownership of the 29,934 shares registered in the name of Pioneer Casualty Company was not in Pioneer's receiver or in Don Shepherd, to whom these shares had been transferred, but was vested in Shepherd's bankruptcy trustee, and, consequently, that neither the receiver nor Shepherd had the right to vote. We as-

4. Burke v. Wiswall, 193 Misc. 14, 85 N.Y. S. 187 (Sup.Ct.1948); Hartt v. Harvey, 32 Barb. 55, 62, 19 How.Pr. 245, 252 (N. Y.Sup.Ct.1860), (statute made inspector judge of qualifications of voters); Umatilla Water Users' Ass'n v. Irvin, 56 Or. 414, 108 P. 1016 (1910); 5 Fletcher, Cyclopedia Corporations § 2018 (perm.ed. 1967); cf. In re Mohawk & H.R.R., 19 Wend. 135 (N.Y.Sup.Ct.1838) (inspectors act judicially in determining whether a vote is receivable and ministerially in registering it).

Apparently the narrow interpretation of the inspector's duties evident in some New York decisions (supra note 3) has been changed by N.Y.Bus.Corp. Law § 611 (McKinney's Consol.Laws, c. 4 1963), which gives the inspectors authority to determine among other matters "the validity and effect of proxies." See E. Aranow & H. Einhorn, supra at 408.

sume that Shepherd's trustee was the beneficial owner, but, as against the corporation and its officers, beneficial ownership does not carry with it the right to vote without having the shares transferred on the books. A bylaw of General Electrodynamics Corporation provides that stock is transferable only on its books. This bylaw indicates the strong interest of the corporation and its stockholders in determining stock ownership quickly by reference to the corporate records. If beneficial title is in dispute, that dispute cannot properly be decided by the election inspector, and neither should the losing faction be able to go into court to invalidate the election on the ground that the ownership of certain shares was not correctly shown by the corporate records. For even greater reason, the election should not be interrupted or suspended while complicated questions of title to stock are litigated to final judgment.

The rule that under such a bylaw, eligibility to vote at corporate elections is determined by the corporate records rather than by the ultimate judicial decision of beneficial title of disputed shares is well sustained by authority. In re Giant Portland Cement Co., 26 Del.Ch. 32, 21 A.2d 697 (Ch.1941); In re Argus Printing Company, 1 N.D. 434, 48 N.W. 347 (1891); In re Mohawk & H. R. R., 19 Wend. 135 (N.Y.1838); E. Aranow & H. Einhorn, *supra*, 385–389; 5 Fletcher, Cyclopedia Corporations § 2033 (perm. ed. 1967). This rule is in accordance with Tex.Bus. Corp.Act Ann. art. 2.27(A) (1956), V.A. T.S., which provides, "The original stock transfer books shall be prima-facie evidence as to who are the shareholders entitled . . . to vote at any meeting of shareholders." According to E. Aranow & H. Einhorn, *supra* at 386, although such a statute uses the term "prima-facie," it has the effect of making stock records conclusive on the inspector. The term "prima-facie" avoids any implication that the stock record is conclusive in a suit concerning title to the stock.

The binding effect of the stock record on corporate officers does not leave a beneficial owner without remedy. He may be presumed to know that the record owner can vote the stock. The beneficial owner can protect his interest by requiring a transfer on the books or by demanding a proxy from the record owner, and if voluntary compliance is not forthcoming, relief is available by injunction or mandamus. McLain v. Lanova Corporation, 28 Del.Ch. 176, 39 A.2d 209 (Ch.1944); Haskell v. Read, 68 Neb. 107, 93 N.W. 997 (1903); Amidon v. Florence Farmers' Elevator Co., 28 S.D. 24, 132 N.W. 166 (1911). In the present case Shepherd's trustee, the beneficial owner, made no effort to vote the shares. He sought no proxy from the receiver or the receivership court. In these circumstances neither the corporate officers nor any of the other stockholders were in a position to assert that only the trustee had the right to vote.

The question presented to the inspector was, who was entitled to act for the record owner? The shares were registered in the name of Pioneer Casualty Company, which was in receivership and had no officers to act for it. The only person entitled to act for Pioneer was its receiver under orders of the 126th district court of Travis County. The receiver, acting under such an order, gave a proxy to Shepherd to act for Pioneer, with instructions to give a further proxy to plaintiffs Matthews and Thorp, and Shepherd, acting for Pioneer in accordance with the proxy to him, gave a proxy to plaintiffs. This transaction was essentially the same as if the receiver, acting under the court's order, had given the proxy directly to plaintiffs. The recitation in the order that Shepherd was the beneficial owner is of no consequence, since the beneficial owner, whether Shepherd or his trustee, had no right under the bylaws to vote the shares as against General Electrodynamics Corporation and its officers.

The receiver's authority to act for Pioneer is governed by the following

provision of Tex.Bus.Corp.Act Ann. art. 2.29(G) (1956):

> "[S]hares held by or under the control of a receiver may be voted by such receiver without the transfer thereof into his name if authority so to do be contained in an appropriate order of the court by which such receiver was appointed."

This same language appears in the bylaws of General Electrodynamics Corporation.[5] Defendants argue that the Pioneer Casualty Company shares were not "held by or under the control of the receiver" because they were not listed as part of the assets of the receivership and the certificates were actually held by a Detroit bank, and that either the bank or Shepherd's trustee, as beneficial owner, had "control" of them. We do not construe the statute as referring either to physical control of the certificates or beneficial ownership of the shares. We construe it rather as meaning that if the shares stand on the books of the issuing corporation in the name of a corporation which is in receivership, the shares are "held by" the receiver to the same extent that legal title would be held by the corporate stockholder in the absence of a receivership, though beneficial title may have been transferred to someone else. The statute gives the equitable or beneficial owner no greater right to vote the stock than he would have if the stockholder of record were not in receivership. Since the stockholder of record was Pioneer Casualty Company, and the receiver was authorized by court order to act for Pioneer, the inspector's proper course was to accept the stock record as determining that the right to vote was in Pioneer Casualty Company, and to accept the proxies given by the receiver to Shepherd and by him to plaintiffs as valid.

■ Defendants argue that if the inspector was authorized to go behind the stock book and recognize the voting rights of the receiver for Pioneer Casualty Company, he was authorized to go further and determine the beneficial ownership of the stock for the purpose of the election. We do not agree. The inspector was bound by the stock book to consider Pioneer Casualty Company the legal owner for the purpose of the election, but he was required to determine who could act for the record owner, just as if someone had challenged the authority of a person purporting to act as an officer of a corporate stockholder. Since Pioneer was in receivership, the inspector could consider that fact and should have treated the receiver as the authorized representative of the record owner. It is quite another matter to say that the inspector should have inquired into beneficial ownership of the stock and recognized the right of Shepherd or his trustee in bankruptcy to vote the shares.

■ Defendants also contend under their fourth point that the inspector properly rejected the proxies from stockholders Candis and Wrobliske because their shares had already been voted and the polls had closed. This point is overruled. The trial court found that the meeting was recessed rather than finally adjourned on the afternoon of November 8, and that the polls were still open on November 9, when these proxies were presented. No other conclusion is possible under this record, since the business of the meeting was the election of directors, which could not be completed until the result was announced. Tabulation of proxies and ballots was still in progress when these proxies were presented, and no result was announced until later that evening, when the inspector made his certificate. In absence of any controlling bylaw, agreement or other binding provision con-

---

5. Since Pioneer Casualty Company was in receivership, these statutory and bylaw provisions control, and we are not concerned with provisions of Tex.Bus.Corp. Act Ann. art. 2.29(E) (1956), or the corresponding bylaw ordinarily governing voting of shares standing in the name of another corporation.

cerning earlier closing of the polls, a stockholder has the right to change his vote so long as the result has not been finally announced. Zierath Combination Drill Co. v. Croake, 21 Cal.App. 222, 131 P. 335 (1913); Zachary v. Milin, 294 Mich. 622, 293 N.W. 770 (1940); State ex rel. David v. Dailey, 23 Wash.2d 25, 158 P.2d 330 (Wash.1945); 5 Fletcher, Cyclopedia Corporations § 2017 at 104 (perm. ed. 1967).

*Judgment*

In No. 18,094 the order granting the temporary injunction is reversed and the temporary injunction is dissolved. In Cause No. 18,117 the final decree is reversed and judgment is here rendered dismissing the action and restoring the parties to the status existing when the suit was filed. We can assume that the inspector has no authority to receive any further proxies or votes, since none of the parties here assert that he has such authority. In order to maintain the status quo and preserve defendants' right to appeal, we have heretofore issued a temporary injunction restraining plaintiffs from holding the annual stockholders' meeting on May 31, 1973. This temporary injunction will remain in force until this judgment becomes final and our mandate is filed in the trial court.

Costs are taxed against plaintiffs Matthews and Thorp individually. No costs are taxed against the corporation, which has been made a party to this appeal.

Reversed and rendered.

## ON MOTION FOR REHEARING

Several new contentions are raised in plaintiffs' motion for rehearing. First, plaintiffs argue that equitable relief was necessary before completion of the election to prevent defendants from soliciting additional proxies and manipulating the election so as to deprive plaintiffs and other stockholders of their right to vote. Plaintiffs rely on the trial court's finding that defendants "threatened to keep the voting polls at said meeting open an unreasonable period of time in order to increase management's vote and to diminish Plaintiffs' vote."

■ This finding was challenged in defendants' original brief as without support in the evidence. If supported by evidence, it could not justify the court's adjudication of the result of the election and the membership of the board of directors in an action against the election officials alone. At most, it might have supported an order requiring defendants to close the polls. We do not decide whether this limited relief would have been proper, since that question has not been presented to us. In any event, it is now unnecessary because defendants have precluded themselves from accepting any additional ballots by the affirmative allegation in their answer "that voting for the election of directors was closed prior to November 10, 1972, and that Defendant Julian Meer certified the results of the election to the chairman of the meeting of the stockholders and President of the Corporation and that such certification was duly accepted and formally announced prior to November 10, 1972." Although plaintiffs deny the factual accuracy of this allegation, and the trial court found to the contrary, it is a judicial admission binding on defendants. Consequently, we can assume that no more votes will be accepted.

■ Plaintiffs also contend that they have been deprived of their voting rights without due process by our holding that the election inspector has discretionary authority to determine the validity of proxies. We were careful to point out that since the inspector's authority is not defined by statute or bylaw, any decision he makes in accepting and tabulating votes is only for the purpose of an initial declaration of the result and cannot bind the opposing candidates or the courts in post-election litigation. Plaintiffs insist, however, that due process requires judicial review of the inspector's decisions before the result is de-

clared. We hold that due process does not require judicial review of each step in a corporate election. Judicial scrutiny after the election is enough in the absence of extraordinary circumstances not shown here. In extraordinary cases, corporate election officials who fail to perform their duties may be required to do so, as may public election officials, but in such a case the court should not undertake to determine the result before the votes have been canvassed and the result has been formally declared.

Here plaintiffs have failed to show that defendants have done anything that would deprive plaintiffs of an effective post-election determination of their rights. On the contrary, the inspector was careful to tabulate all the votes, even those cast under the disputed proxies, in order that the validity of the proxies could be judicially ascertained. Except for the inspector's failure to accept these proxies, none of the election irregularities found by the trial court appear to have had any effect on the result.

Plaintiffs insist that availability of quo warranto is not ground for denying equitable relief because under Tex.Rev.Civ.Stat. Ann. art. 6253 (Vernon 1970) quo warranto is cumulative of other available remedies. We do not hold that quo warranto is the only remedy available to the losers in a proxy contest. We hold that stockholders are not entitled to extraordinary mandatory relief against the election officials before completion of the election without showing that their voting rights could not be fully protected after the election in a suit, such as a proceeding in quo warranto, in which the claims of all interested candidates may be presented and finally adjudicated. Quo warranto is normally an appropriate remedy for determining issues affecting the result of an election, such as the validity of disputed proxies, according to the authorities cited in our original opinion.

▮ Finally we reject plaintiffs' claim that Article 6253 is unconstitutional be-

cause it makes protection of voting rights depend on exercise of discretion by the district attorney or attorney general and deprives stockholders of the right to control the litigation and be represented by their own counsel. Plaintiffs made no showing in the trial court that these officers could not be expected to do their duty. Conceivably, a question of due process might arise after a corporate election if the losers could show that they were deprived of judicial determination of their rights because both the district attorney and attorney general refused to bring quo warranto, or refused to permit counsel for the stockholders to participate. That situation is not before us, and our opinion should not be taken as authority for denying equitable relief in such a case. We hold only that extraordinary mandatory relief is not available before the election process is complete in absence of a showing that the process is being frustrated or unreasonably delayed.

The motion for rehearing is overruled.