Francis J. SALGO et al., Appellants,

v.

Hon. Leonard HOFFMAN, Jr., Judge, 160th Judicial District Court of Dallas County, Texas, Appellee.

No. 18585.

Court of Civil Appeals of Texas, Dallas.

Feb. 25, 1975.

Rehearing Denied March 20, 1975.

---

Ben L. Krage, Rosenberg, Kasmir & Willingham, Dallas, for appellants.

Paul M. Thorp, Matthews & Thorp, Dallas, for appellee.

GUITTARD, Justice.

This original proceeding is a second sequel to our decision in Salgo v. Matthews, 497 S.W.2d 620 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.). In Salgo v. Hoffman, 515 S.W.2d 756 (Tex.Civ.App.—Dallas 1974, no writ), we denied petitioner Salgo's application for mandamus and injunction to declare the five "management candidates" elected. Petitioner then returned to the trial court and applied for an order restoring control of the corporation to the three-man board of directors composed of Salgo, Bell and Matthews, who were in office at the time of the stockholders' meeting in November 1972. The trial court denied that relief, and petitioner now seeks it here. We deny this relief also.

Petitioner asserts that our order reversing the final decree of the trial court is not self-executing, but requires the assistance of the court, since respondents and the "nonmanagement candidates" installed as directors by the erroneous decree are still in control of the corporate offices,

records and assets. He argues that the current status of the litigation is intolerable in that he has established the right of the three-man board to control the affairs of the corporation until their successors are elected and qualified, and that denial of the relief now sought would extend the control of the usurping board, which gained that control under the trial court's erroneous decree. Petitioner insists that a litigant has the right to expect that courts will undo what they have erroneously done, and that if no affirmative order is issued to enforce the final judgment in this case, that judgment and the whole appellate process will be meaningless.

Accordingly, petitioner sought in the trial court, and now seeks here, a "writ of mandamus directing the trial court to enforce the mandate, specifically, by enjoining plaintiffs Matthews and Thorp and all those in active concert or participation with them, from failing or refusing to immediately relinquish control of the offices of Director of General Electrodynamics Corporation unto the original three-man Board of Directors composed of Messrs. Salgo, Bell and Matthews, pursuant to the Opinion of this Court in the previous Application for Writ of Mandamus." His prayer continues: "This Court should further order the trial court to require plaintiffs-appellees to immediately return unto the corporation and those in its control, all matters, things and property belonging to the corporation."

We hold that this relief cannot be granted for three separate reasons: (1) it goes beyond the scope of our original judgment, which granted no affirmative relief; (2) it is not based on proof that any wrong has occurred, by way of denial of petitioner's rights, since our judgment became final; and (3) it would affect the rights of persons not parties here.

1. *Scope of Original Judgment*

Our original judgment on the appeal was a negative pronouncement. We

reversed the trial court's decree granting relief to Matthews and Thorp and denied all relief prayed for. We granted no affirmative relief to Salgo. We had no authority to grant affirmative relief, since Salgo asked for none, either in the trial court or on appeal. Accordingly, we rendered judgment "dismissing the action and restoring the parties to the status existing when the suit was filed." This provision of our judgment was not an affirmative order, but only made clear that after return of our mandate, the orders of the trial court and the temporary injunction which we had granted pending the appeal would no longer stand as obstacles to the parties in reconvening the stockholders' meeting and completing the election which had been interrupted by the suit, or in carrying out any other corporate process.[1]

We are unable to find any authority for the view that such a negative judgment gives the successful appellant a right to immediate affirmative relief other than vacating the erroneous order. Petitioner cites cases such as United States v. United States District Court, 334 U.S. 258, 68 S. Ct. 1035, 92 L.Ed. 1351 (1948), and Wells v. Littlefield, 62 Tex. 28 (1884), in each of which the appellate court had remanded the case for further proceedings in the trial court and the trial court had failed to follow instructions. In such cases, clearly, the appellate court has power to require the trial court to conform its further proceedings to the mandate of the appellate court. Here no further proceedings in the trial court were necessary. Since we denied all relief sought in the action, we would have no occasion to issue an extraordinary writ to enforce our judgment unless the trial court, or some other court, had attempted to grant the relief we had

denied. Petitioner does not suggest that our judgment has been disregarded in this sense.

■■■ We do not leave petitioner to enforce his rights by self-help. When an erroneous judgment has not been suspended pending appeal, and the relief granted has already been obtained, the successful appellant may reclaim what he has been deprived of, and if his demands are wrongfully resisted, he is entitled to the assistance of the courts. But a final judgment denying relief to his adversary does not entitle him to a court order for immediate affirmative relief. Like any other litigant whose rights have been denied, he must file a proper pleading, have citation served on his opponent and anyone else whose rights will be affected, establish by evidence a denial of his rights, and obtain the necessary relief in the normal course of the judicial process. If immediate relief is necessary and proper, it is available as ancillary relief in the new suit.

■■■ Petitioner has cited no authority supporting his contention that on reversal of a judgment which has not been superseded, the trial court has authority to order immediate restitution. We know of no precedent for such summary relief. Although we agree that courts have the obligation to undo what they have wrongfully done, we conclude that an order for immediate affirmative relief does not follow automatically, and that jurisdiction to grant such relief must be invoked in the regular manner. Courts should act only when their powers are properly invoked, because only then can relief be complete and the rights of all interested persons be recognized and protected.

---

1. After final action by the Supreme Court, petitioner Salgo filed a motion asking us to amplify our mandate by directing the trial court to issue certain affirmative orders. We denied most of this relief, but added to our usual form of mandate language directing the trial court "to issue whatever process may be necessary to give effect to such order." In that proceeding we had no authority to amplify our former judgment and could not properly grant affirmative relief not sought in the original action. We could not convert a judgment denying relief to one party into a judgment granting relief to the other.

## 2. *Proof of Denial of Rights*

■ Even if the present relief were sought in a proper proceeding brought for that purpose, it could not be granted on the present record because petitioner has presented no proof that his rights have been denied. Petitioner contends that no proof is required because when our mandate was filed in the trial court, he was entitled to have some sort of process issued immediately requiring respondents "and all those in active concert or participation with them" to conform to this court's judgment. We cannot agree. Until proof is made that petitioner has asserted his rights and they have been denied, or that respondents have affirmatively declared their intention to deny those rights, no wrong has been established on which an order for affirmative relief may be based.

On filing our mandate, petitioner and the three-man board of directors had authority to resume control of the corporation, reconvene the stockholders' meeting and complete the election which had been interrupted by the suit. Petitioner has not shown any attempt to assert that authority. Neither has he shown that respondents affirmatively declared any intention to deny it. Respondents have acknowledged before this court that if petitioner had undertaken such action, they would have had no choice but to submit. Petitioner has offered no proof that respondents would not have submitted. Respondents' control of the corporation was exercised only under the authority of the decree which now has been reversed, and petitioner has not shown that respondents asserted any right to continue such control when our judgment became final.

The only ground upon which respondents are shown to have denied the authority of petitioner and the three-man board of directors to resume control of the corporation concerns events after our judgment became final. Respondents now take the position that the authority of the three-man board has terminated under the by-laws because their successors have been elected. Respondents contend that on Salgo's failure to act after return of our mandate, they had authority, as representatives of a majority of the stockholders present at the meeting in November 1972, to reconvene the meeting without notice to Salgo and complete the election. They attempt to show that they took this action on October 4, 1974, and that at the reconvened meeting, the five "nonmanagement" candidates were declared elected.

■ The dissenting opinion of the Chief Justice concedes that "we cannot finally adjudicate the effect of the meeting of October 4 since that question involves the rights and status of parties not now before the court." Nevertheless, the Chief Justice would go ahead now and hold that meeting "entirely ex parte and invalid." The majority conclude that we have no authority to decide that issue in this proceeding to enforce our judgment. We hold that in the guise of enforcing that judgment, we cannot adjudicate the legal effect of events which could not have been considered in rendering our original judgment because they have occurred since our judgment was rendered.

Petitioner insists that no proof need be made of respondents' denial of his rights because all he now asks is that we order the trial court to enforce our judgment. We cannot agree. An affirmative order, such as petitioner now seeks, must be based on proof of a new wrong by respondents after our judgment became final, such as resistance by respondents to a demand by petitioner to resume control of the corporation. If such resistance is based on a claim that the terms of office of the three-man board have terminated by election of their successors at the supposed reconvened meeting on October 4, that claim can be adjudicated on proper pleading and proof in a suit brought for that purpose.

### 3. *Absence of Parties*

Even if respondents' denial of petitioner's rights were fully shown, the relief sought would be of questionable practical effect because of the absence of persons whose interests would necessarily be affected. The only parties here are petitioner Salgo and respondents Matthews and Thorp. The suit was originally filed by respondents as stockholders, and as holders of proxies from other stockholders, against petitioner Salgo, as chairman of the stockholders' meeting, and against Julian Meer, the election inspector. The trial court granted the relief sought and thus transferred control of the corporation to the "nonmanagement" candidates for the board of directors. We held this to be erroneous because the suit was premature, and also because it was an inappropriate remedy for determining the ultimate issue, that is, the result of the election, which could be finally determined only in a proceeding in which all candidates could be joined as parties. Consequently, we "dismissed" the action. Salgo v. Matthews, 497 S.W.2d 620 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.).

▆▆▆▆ Although we recognize the urgency of an end to this litigation, the absence of necessary parties still prevents proper resolution of the controversy. As stated earlier in this opinion, respondents contend that the authority of the three-man board of directors has been terminated by the selection of their successors at the supposed reconvened meeting on October 4, 1974. Four of the candidates declared elected at this supposed meeting are not before the court. We are not prepared to hold, in absence of a hearing at which they would have an opportunity to present their views, that they would be bound by an order directed to respondents to turn the affairs of the corporation over to the earlier three-man board. Unless they are so bound, the relief now sought would have no practical effect.

Another problem in the present proceeding is the composition of the three-man board which petitioner Salgo asks us to restore to control of the corporation. Two members of that board are petitioner Salgo and respondent Matthews. They are in adverse positions, as indicated by this entire litigation. Bell, the third director, is not a party to this litigation and we do not know what his position is or whether he is still willing to serve as director. Consequently, we cannot determine whether an order to turn the affairs of the corporation over to the three-man board, even if otherwise appropriate, would give petitioner effective relief.

Because of the absence of these interested persons, we conclude that the case falls within the well-settled rule that mandamus must be denied when it would be ineffective because of the absence of persons whose rights would be vitally affected. Scruggs v. McCart, 119 Tex. 464, 32 S.W. 2d 823 (1930); Kelly v. Lobit, 134 S.W.2d 428, 429 (Tex.Civ.App.—Galveston 1939, no writ); and cf. Magnolia Petroleum Co. v. Walker, 124 Tex. 125, 73 S.W.2d 526, 527 (1934); City of Houston v. Allred, 123 Tex. 35, 66 S.W.2d 655, 656 (1934).

We deplore the prolongation of this litigation. Nevertheless, we cannot escape, the same basic difficulty that confronted us on the original appeal. We cannot finally resolve the controversy because of the absence of persons whose rights must be determined before the dispute is resolved. On that ground we reversed the original decree and denied the relief sought by respondents. On similar grounds we conclude that neither the trial court nor this court can grant the relief which petitioner now seeks.

Original application for mandamus and injunction denied.

CLAUDE WILLIAMS, C. J., dissents and files opinion.

CLAUDE WILLIAMS, Justice (dissenting).

I must respectfully dissent. This litigation has traversed a long and rocky road and it is high time that it should be brought to an end. I can easily share the frustration of the petitioners Salgo, et al, when they hear the majority of this court tell them that we cannot order the trial court to do that which is necessary to be done in order to enforce our original decree. In our original judgment, Salgo v. Matthews, 497 S.W.2d 620 (Tex.Civ.App. —Dallas 1973, writ ref'd n. r. e.), we specifically, clearly and unequivocally said that the contention made by Salgo, et al, was correct and that the injunction which had been issued by the trial court was void and should be vacated. But we did not stop there. We also decreed in plain and unequivocal language that "judgment is here rendered dismissing the action and restoring the parties to the status existing when the suit was filed." Again, we did not stop with such statement. In our mandate directed to the trial court we directed such court to issue such writs and processes as would be necessary to carry out and enforce the judgment of this court. Now, after properly asking the trial court to do what we had said ought to be done and to restore the parties to the same status that existed at the time the erroneous injunction was issued, and being denied such relief, Salgo seeks relief from us asking that we do nothing more than to undo that which the trial court should not have done in the first place. In reply to this plea the majority has now, for the first time, said that we cannot grant the relief sought because our original judgment was negative and not affirmative. Faced with this situation I can join with Salgo, et al, and with the prophet Jeremiah in lamenting: "Is there no balm in Gilead?"

I find no rational basis for the statement of the majority to the effect that our original judgment on the appeal was nothing more than a negative pronouncement. Our judgment in that case said two things: (1) We said that the trial court was in error in granting the injunction and that it was dissolved, *and* (2) that the *parties are restored to the status existing when the suit was filed.* At the time I concurred in the original opinion I did so because I thought this court was affirmatively returning the parties to the status quo prior to the filing of the suit. I still am of that opinion and can find no basis whatsoever for the statement that such decision was negative in character. Since, in my judgment, our original opinion was affirmative in nature and granted positive and affirmative relief to Salgo, et al, it necessarily follows that this court possesses the complete authority to see to it that its judgment is obeyed. United States v. United States District Court, 334 U.S. 258, 68 S.Ct. 1035, 92 L. Ed. 1351 (1948) and Wells v. Littlefield, 62 Tex. 28 (1884).

Respondents, Matthews, et al, have filed a motion to dismiss the present petition for mandamus. It is interesting to note that respondents do not contend, as does the majority, that our original opinion was negative in character and therefore of no force and effect insofar as this court's power to enforce it is concerned, but instead the motion to dismiss is based upon the proposition that we have lost jurisdiction to enforce our mandate because the matter is moot. This theory is based on an alleged reconvening of the stockholders' meeting, which had recessed on November 8, 1973, to count the votes. Respondents insist that at this reconvened meeting the election was completed, and that the five candidates proposed by the Matthews or "nonmanagement" faction were declared elected. Consequently, respondents argue, these candidates have now succeeded to the offices of the former three-man board, and this court has no jurisdiction to issue an order which would restore control of the corporation to the three-man board, whose terms have expired. Respondents further

argue that under the reality of our original opinion any challenge by petitioner to the results of the election, as so declared on October 4, is a matter for an independent action of quo warranto.

This motion to dismiss is without merit for the simple reason that the supposed October meeting was entirely ex parte and invalid. It was not called by petitioner Salgo, who was chairman of the original meeting. Respondents admit it was held without any notice to petitioner, and that they deliberately refrained from notifying Salgo because they prefer that he not be present. Respondents' reliance upon bylaw provisions paragraph 4.3 is not well-founded. That provision of the bylaws does not permit the October meeting to constitute a *resumed meeting* without notice to petitioner Salgo. The circumstances under which respondents undertook to reconvene the meeting in October cast serious doubt on respondents' assertion that the election was effectively completed. In all probability the October meeting was entirely devoid and of no force and effect and did not have the power and authority to elect the present officers who, accordingly, hold the offices and control the corporation without authority. In this proceedings, however, we cannot finally adjudicate the effect of the meeting of October 4, since that question involves the rights and status of parties not now before the court, including the directors declared elected at that meeting and the officers elected by them. All that I would do would be to hold that the present proceeding is not shown to be moot by reason of a valid election of the successors of the three directors who were in office at the time the suit was filed.

Perhaps, as soon as our mandate was filed in the trial court on September 19, 1974, petitioner Salgo, as chairman, could have reconvened the meeting on whatever notice may have been appropriate, and could then have proceeded with the election without further order of the court. Respondents Matthews, et al, however did not request him to do so, and did not offer him any of the facilities of the corporation, of which they were then in de facto control, to facilitate the process. Instead, they undertook to hold their own "star chamber" or rump meeting without notice to petitioner or the stockholders. This meeting, the attendant election and assumption of offices by the "nonmanagement" five-man board would seem to be clear evidence of respondents' denial of Salgo's rights as determined by the original judgment of this court. Under these circumstances, I would hold that petitioner Salgo was justified in seeking the assistance of the trial court and of this court in giving effect to our judgment.

Petitioner Salgo is correct in contending that our order reversing the final decree of the trial court, dismissing the action, and "restoring the parties to the status existing when the suit was filed," is not self-executing, but requires the assistance of the court, especially since respondents Matthews, et al, and the board of directors installed by the erroneous decree are still in control of the corporate offices, records and assets. He is obviously correct when he argues that the current status of the litigation is intolerable, in that he has established the right of the three-man board to control the affairs of the corporation until their successors are elected and qualified on proper completion of the election which began on November 8, 1972, and that denial of the relief now sought would extend the control of the usurping board. I certainly agree with petitioner when he insists that a litigant has the right to expect that courts will undo what they have erroneously done, and if they fail to do so, as in this case, this court's opinion and judgment would be meaningless. I say that the trial court can and should undo what it has erroneously done. From the beginning, this litigation has been governed by equitable considerations. In equity we can look through form to substance and make sure that the substantial rights of the parties are protected. The fundamental issue is whether the Salgo faction or the Matthews

faction is entitled to control the affairs of the corporation pending final determination of the results of the election and a proper suit brought for that purpose, and pending another election of directors at a later stockholders' meeting. The trial court's decree erroneously ousted the three-man board, on which the Salgo faction had a majority, and installed the Matthews board. If the relief now sought is denied, respondents will be able to continue their wrongful control of the corporation pending further litigation and shift to the petitioner the burden of initiating and carrying forward that litigation. Respondents may also be in the position of incumbent management and soliciting votes at the next election of directors. I would not allow them to realize these advantages from their premature lawsuit and erroneous decree which they obtained from the trial court. Consequently, I would grant the relief now prayed for and issue our writ of mandamus directing the trial court to restore the three-man board of directors, consisting of Salgo, Bell and Matthews, pending completion of the election which was interrupted by filing of this suit. I would further direct and order that the trial court restrain respondents and all persons acting in concert with them from interfering with control of the corporation by the three-man board, or their successors, as determined by the election so to be completed. In summary, I would do that which is necessary to bring this litigation to an end and do that which we affirmatively stated should be done in our original opinion. In doing so, I would apply the plain provisions of Texas Rules of Civil Procedure 1 which expressly provides that the objective of our rules is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law and, to the end that this objective may be obtained with as much expedition and dispatch and at the least expense both to litigants and to the State as may be practicable, such rules shall be given a liberal construction.

In registering this dissent, I share the feelings of Justice Jochems, of the Supreme Court of Kansas, who in his dissenting opinion in Martin v. Stillie, 129 Kan. 19, 281 P. 925, 68 A.L.R. 415, 418–419 (1929) said:

I am not entirely unsympathetic with the attitude of the majority of the court in this case. Nor am I unappreciative of the annoyance caused by its frequent appearance in this court. It seems that no matter what we do—like Banquo's ghost —this Stillie Case continues to haunt us and will not down. Again, it is like the scarlet spot on Lady Macbeth's hand. "Out damned spot! Out, I say!" But it would not "out." To paraphrase the words of that conscience be-deviled woman, we may repeat again and again, "Out, damned Stillie Case. Out!" and yet it will not "out."