**CROWN RESOURCE CORP., Plaintiff and Counter-Defendant,**

v.

**GOLD CAPITAL CORP., Mark E. Jones, III, and Albert William Dugan, Defendants and Third-Party Plaintiffs,**

v.

**Stewart A. JACKSON, William C. Jordan, Alice A. Lucchesi and Ronald T. Mackey, Third-Party Defendants.**

**Civ. A. No. 86-K-579.**

United States District Court, D. Colorado.

Jan. 13, 1987.

Donald T. Trinen, and Christa D. Taylor, Hart & Trinen, Denver, Colo., for plaintiff and third-party defendants.

Craig Maginness, and Rodney D. Knutson, Sherman & Howard, Denver, Colo., David A. Furlow, Ross, Griggs & Harrison, Houston, Tex., for defendants and third-party plaintiffs.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### Introduction

This case is essentially a declaratory judgment action to fight off an avowed attempt by Gold Capital to wrest control of Crown from its current management. Two motions were pending this morning: Crown's motion for an order holding the election results in abeyance, which was withdrawn on the record, and Crown's verified motion for entry of a temporary restraining order.

*han v. Farm Bureau Mut. Ins. Co. of Mo.,* 523 S.W.2d 173 (Mo.App.1975). As this Court concludes that policy coverage does not extend to

the type of injury plaintiffs allege in the underlying suit, it need not consider the competing arguments on the estoppel issue further.

## Pertinent Case History

On September 26, 1986, I granted Gold Capital's motion for a TRO on the pending shareholder election. I found Crown's proxy statement to be materially misleading and so enjoined the election, which was originally scheduled for September 29. I directed Crown to hold a meeting by January 1, 1987. I also ordered the parties to submit their proposed proxy statements to me for approval before the date of the election.

Following the hearing on the TRO, each party prepared and submitted a proxy statement. I ruled on objections filed by each side. Since the imbroglio continued, I decided to appoint an independent election inspector to oversee the election format and to tabulate its results. Sam Wing, a distinguished securities law specialist, was appointed for this purpose. Order of December 29, 1986.

The election was held on December 30. Mr. Wing filed an election report on January 5, 1987. A majority of shares entitled to vote was present. Wing Report, Exhibit 2, ¶ 3. According to Mr. Wing's tabulations, the Gold Capital group received 13,258,873 votes. *Id.*, ¶ 5. Entrenched management at Crown received only 12,769,478. *Id.* Thus the challengers prevailed on this count by 489,395 votes. Crown claims "[t]his margin is very slim and represents approximately 1.5% of the total outstanding shares of Crown." Crown's Motion to Hold Election Results in Abeyance, ¶ 2. Crown has 31,066,223 shares of outstanding stock entitled to vote. Wing Report, Exhibit 2, ¶ 2.

Following receipt of Mr. Wing's report, I issued the following order on January 6, 1987:

The report of the independent election inspector has been received. The parties may file objections to the report on or before January 21, 1987. The parties may file responses to opposing party's objections on or before February 2, 1987. Any party may file comments or objections as well to the time reports of the inspector and the fee to be awarded him within the above stated time frames.

## Crown's Motions

On the same day I issued the order, Crown moved for an order

directing that the results submitted by the independent election inspector appointed by this court are only preliminary, and that until this court has had an opportunity to hear and consider the arguments of each party to this proceeding regarding such results, neither party's slate of directors has been elected at this point in time and that current management is still authorized to operate the company and to conduct its affairs.

Crown was aware of my order of January 6 when it moved to hold the election results in abeyance. Motion, ¶ 3. Crown intends to file objections. *Id.*, ¶ 5. Crown apparently believes Mr. Wing should not have counted either the 367,810 votes of the Independent Election Corporation of America or the 123,800 votes received by datagram. Gold Capital's Response at 3.

On the same day, January 6, people from Gold Capital presented themselves at Crown's offices and announced their intention to take control of Crown. *Id.*, ¶ 4.

Gold Capital's attempts to assert control over Crown will, according to the latter, "result in tremendous confusion and turmoil with respect to Crown's business and affairs and will result in irreparable injury to Crown and all shareholders of Crown." *Id.*, ¶ 6.

On January 8, 1987, Crown moved for a TRO "restraining defendants from issuing press releases, or otherwise representing that they constitute the legitimate management of Crown, until this Court rules upon the objections to be filed by Crown in connection with the report of the independent election inspector."

The recent TRO motion is essentially a more detailed expansion of the earlier motion for an order holding the election results in abeyance. Crown's TRO merely sought faster action than the January 13

hearing date set in response to the abeyance motion. *See* Motion for TRO, ¶ 8. This attempt failed, since both motions were set for the 13th. Thus, we were really faced with only one motion. Crown recognized this and withdrew the first motion at the commencement of this morning's hearing.

The new TRO motion does add some new information. On January 7, 1987, Gold Capital issued a press release indicating it had succeeded in ousting Crown's management. Motion for TRO, Exhibit B. Crown has also attached to its motion the minutes of a meeting held by Gold Capital representatives in which the apparent victors elected new corporate officers.

### Gold Capital's Response

■ Gold Capital presents a double-fisted defense. First, Gold Capital contends that "[f]rom the time Mr. Wing's report on the result of the election was certified and delivered, the Committee's [Gold Capital's] nominees are in fact the acting directors elected by the shareholders of Crown." Crown's Response, at 4–5.

I believe Gold Capital is correct. Oddly enough, though, Crown has provided us with the legal authority in support of Gold Capital's position. In ¶ 3 of its TRO motion, Crown cited the case of *Salgo v. Matthews*, 497 S.W.2d 620 (Tex.Civ.App.1973), for the proposition that "[t]he report of the independent election inspector by itself, is wholly insufficient to bind the corporation or this court, and such report merely constitutes a ministerial recommendation to this court with respect to the tabulation of said votes."

Unfortunately for Crown, *Salgo* stands for the opposite proposition. The *Salgo* court wrote:

Plaintiffs' contention that the function of an election inspector is purely ministerial rather than judicial has support in opinions from several jurisdictions, but most of the statements to this effect must be taken in context to mean that the decision of the inspector is not binding on the court in subsequent litigation to review the election. Other courts have recognized that election inspectors have a measure of discretion and have refused to disturb their findings even after the election if made fairly, honestly and in good faith. Since the authority of the election inspector here is not defined by statute or bylaw, we have no basis to hold that his decision concerning validity of the disputed proxies cannot be judicially reviewed after the election. However, we do hold that he has discretionary authority to decide such matters for the purpose of making an initial determination of the result of the election.

\* \* \* \* \* \*

The function of the inspector is to determine the result of the election accurately and declare the result promptly so that the affairs of the corporation may go forward,.... That function ought not to be interrupted while opposing factions litigate. If he errs, the losing party may resort to the courts after the election to determine whether the result was properly declared.

*Id.* at 627–628.

Thus, under *Salgo,* the initial determination made by the inspector appears to be binding on the conduct of the parties, at least pending judicial review.

Independent research has disclosed another case that is factually similar, *Horizon Corp. v. Anselmi,* 483 F.Supp. 653 (D.D.C.1980). I have shepardized and autocited this case and find it to be good law.

The Anselmi group sought to dislodge Horizon's entrenched management corps. The parties agreed to hold a shareholders meeting under the auspices of independent election inspectors. On September 26, 1979, the court ordered the inspectors to issue a preliminary report which the parties could examine and challenge over a seven day period. Following this period, the inspectors were to file a tentative final report with the court. A final report would not be issued by the inspectors, and no declaration of final voting results would be promulgated, until permitted by court order. In

the meantime, the meeting would not be adjourned. *Id.* at 655–56.

The meeting was convened on September 27. According to the tentative final report of the inspectors, the challengers won the election.

In denying Horizon's motion for a preliminary injunction relating to voting at the meeting, *see id.* at 655, the court relied heavily on the tentative final report of the election inspectors. *Id.* at 659–60. *Horizon* is not completely analogous to the current situation, because by suspending the issuance of a final report until it had ruled on the motion for a preliminary injunction, the court kept Horizon Corp. in limbo for some time. Nevertheless, the court's support for the inspectors is clear. For example, the court allowed the inspectors to issue their final report because the continuing enforcement of its order of September 26, 1979 had "with the passage of time become the functional equivalent of an injunction in plaintiff's favor." *Id.* at 661.

■ Gold Capital's second argument is a recitation of the four-part test in *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). Gold Capital contends Crown cannot satisfy any of the four requirements: a substantial likelihood of eventually prevailing on the merits, a showing that the movant will suffer irreparable injury unless the injunction issues, proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party, and a showing that the injunction, if issued, would not be adverse to the public interest.

Without going into a lengthy analysis of *Lundgrin*, I agree with Gold Capital that Crown cannot demonstrate the element of irreparable harm. As I noted in denying a TRO in another recent case (*Kaiser Steel v. Hendrix*, 86–K–2406), the court can always set aside the results of the election, if warranted, or grant other necessary relief. *Pantry Pride v. Rooney*, 598 F.Supp. 891 (S.D.N.Y.1984). *Horizon* makes the same point. There, the court was aware that once seated, the Anselmi group of directors might discontinue the litigation. The court

therefore permitted the management directors to be joined as plaintiffs. *Id.* at 661.

In addition, *Horizon* provides direct support for Gold Capital's argument that Crown cannot satisfy the "public interest" and "harm to other parties" prongs of the *Lundgrin* test. *Horizon*, at 659–60.

In view of the foregoing, Crown's motion for a temporary restraining order is denied.